**9611D MN 0216**

# MINNESOTA
## AUTO POLICY

**READ YOUR POLICY CAREFULLY.**
**THIS POLICY IS A LEGAL CONTRACT BETWEEN THE POLICY OWNER AND THE COMPANY.**

Form 9611D MN (02/16)
version 2.0



## Contents

**INSURING AGREEMENT** ................................................................. 1

**GENERAL DEFINITIONS** ............................................................... 1

**PART I—LIABILITY TO OTHERS**

Insuring Agreement.....................................................................3
Additional Definitions.................................................................3
Additional Payments...................................................................4
Exclusions...................................................................................4
Limits of Liability........................................................................6
Proof of Insurance Laws.............................................................7
Other Insurance..........................................................................7
Out-of-State Coverage ...............................................................7

**PART II—PERSONAL INJURY PROTECTION**

Insuring Agreement.....................................................................8
Additional Definitions.................................................................8
Exclusions.................................................................................11
Limits of Liability......................................................................12
Stacked Personal Injury Protection Option ..............................13
Other Insurance........................................................................13
Additional Duties After Loss ....................................................14
Arbitration.................................................................................14

**PART III—UNINSURED/UNDERINSURED MOTORIST COVERAGE**

Insuring Agreement—Uninsured Motorist Coverage................15
Insuring Agreement—Underinsured Motorist Coverage...........15
Additional Definitions...............................................................15
Exclusions.................................................................................17
Limits of Liability......................................................................17
Other Insurance........................................................................18
Arbitration.................................................................................19

**PART IV—DAMAGE TO A VEHICLE**

Insuring Agreement—Collision Coverage ................................20
Insuring Agreement—Comprehensive Coverage .....................21
Insuring Agreement—Additional Custom Parts or
   Equipment Coverage .............................................................21
Insuring Agreement—Full Comprehensive Safety Glass Coverage .........22
Insuring Agreement—Rental Reimbursement Coverage..........22
Insuring Agreement—Loan/Lease Payoff Coverage ...............22
Insuring Agreement—Pet Injury Coverage ..............................23
Additional Definitions...............................................................23
Exclusions.................................................................................24
Limits of Liability......................................................................25
Payment of Loss.......................................................................27

No Benefit to Bailee ....................................................................................... 27
Loss Payable Clause ...................................................................................... 27
Other Sources of Recovery ............................................................................ 27
Arbitration ....................................................................................................... 28
Appraisal ......................................................................................................... 28

**PART V—ROADSIDE ASSISTANCE COVERAGE**
Insuring Agreement ........................................................................................ 28
Additional Definitions...................................................................................... 29
Exclusions ...................................................................................................... 29
Unauthorized Service Provider ....................................................................... 30
Other Insurance .............................................................................................. 30

**PART VI—DUTIES IN CASE OF AN ACCIDENT OR LOSS** ............................ 30

**PART VII—GENERAL PROVISIONS**
Policy Period and Territory............................................................................... 31
Changes .......................................................................................................... 31
Duty to Report Changes ................................................................................. 32
Settlement of Claims ...................................................................................... 32
Terms of Policy Conformed to Statutes .......................................................... 32
Transfer of Interest ......................................................................................... 32
Fraud or Misrepresentation ............................................................................ 32
Payment of Premium and Fees ...................................................................... 32
Cancellation .................................................................................................... 33
Cancellation Refund ....................................................................................... 34
Nonrenewal ..................................................................................................... 35
Automatic Termination .................................................................................... 35
Legal Action Against Us .................................................................................. 35
Our Rights to Recover Payment...................................................................... 36
Joint and Individual Interests .......................................................................... 37
Bankruptcy ...................................................................................................... 37

## INSURING AGREEMENT

In return for **your** payment of the premium, **we** agree to insure **you** subject to all the terms, conditions and limitations of this policy. **We** will insure **you** for the coverages and the limits of liability shown on this policy's **declarations page**. **Your** policy consists of the policy contract, **your** insurance application, the **declarations page**, and all endorsements to this policy.

## GENERAL DEFINITIONS

The following definitions apply throughout the policy. Defined terms are printed in boldface type and have the same meaning whether in the singular, plural, or any other form.

1.  "**Additional auto**" means an **auto you** become the owner of during the policy period that does not permanently replace an **auto** shown on the **declarations page** if:
    a.  **we** insure all other **autos you** own;
    b.  the **additional auto** is not covered by any other insurance policy;
    c.  **you** notify **us** within 30 days of becoming the owner of the **additional auto**; and
    d.  **you** pay any additional premium due.
    An **additional auto** will have the broadest coverage **we** provide for any **auto** shown on the **declarations page**. If **you** ask **us** to insure an **additional auto** more than 30 days after **you** become the owner, any coverage **we** provide will begin at the time **you** request coverage.
2.  "**Auto**" means a land motor vehicle:
    a.  of the private passenger, pickup body, or cargo van type;
    b.  designed for operation principally upon public roads;
    c.  with at least four wheels; and
    d.  with a gross vehicle weight rating of 12,000 pounds or less, according to the manufacturer's specifications.
3.  "**Auto business**" means the business of selling, leasing, repairing, parking, storing, servicing, delivering or testing vehicles.
4.  "**Bodily injury**" means bodily harm, sickness, or disease, including death that results from bodily harm, sickness, or disease.
5.  "**Covered auto**" means:
    a.  any **auto** or **trailer** shown on the **declarations page** for the coverages applicable to that **auto** or **trailer**;
    b.  any **additional auto**;
    c.  any **replacement auto**; or
    d.  a **trailer** owned by **you**.
6.  "**Declarations page**" means the document showing **your** coverages, limits of liability, **covered autos**, premium, and other policy-related information. The **declarations page** may also be referred to as the Auto Insurance Coverage Summary.
7.  "**Occupying**" means in, on, entering or exiting.

1

8. "**Personal vehicle sharing program**" means a system or process, operated by a business, organization, network, group, or individual, that facilitates the sharing of private passenger motor vehicles for use by individuals, businesses, or other entities.

9. "**Property damage**" means physical damage to, destruction of, or loss of use of, tangible property.

10. "**Rated resident**" means a person residing in the same household as **you** at the time of the loss who is not a **relative**, but only if that person is both:
    a. listed in the "Drivers and household residents" section on the **declarations page**; and
    b. not designated as either an "Excluded" or a "List Only" driver.

11. "**Relative**" means a person residing in the same household as **you**, and related to **you** by blood, marriage or adoption, and includes a ward, stepchild, or foster child. **Your** unmarried dependent children temporarily away from home will qualify as a **relative** if they intend to continue to reside in **your** household. **Relative** does not include a person identified by name as an insured in any other contract for a plan of reparation security complying with sections 65B.41 to 65B.71 of the Minnesota No-Fault Automobile Insurance Code.

12. "**Replacement auto**" means an **auto** that permanently replaces an **auto** shown on the **declarations page**. A **replacement auto** will have the same coverage as the **auto** it replaces if the **replacement auto** is not covered by any other insurance policy. However, if the **auto** being replaced had coverage under Part IV—Damage To A Vehicle, such coverage will apply to the **replacement auto** only during the first 30 days after **you** become the owner unless **you** notify **us** within that 30-day period that **you** want **us** to extend coverage beyond the initial 30 days. If the **auto** being replaced did not have coverage under Part IV—Damage To A Vehicle, such coverage may be added, but the **replacement auto** will have no coverage under Part IV until **you** notify **us** of the **replacement auto** and ask **us** to add the coverage.

13. "**Ride-sharing activity**" means the use of any vehicle to provide transportation of persons or property in connection with a **transportation network company** from the time a user logs on to, or signs in to, any online-enabled application, software, website or system until the time the user logs out of, or signs off of, any such online-enabled application, software, website or system, whether or not the user has accepted any passenger(s) or delivery assignment, including the time the user is on the way to pick up any passenger(s) or property, or is transporting any passenger(s) or property.

14. "**Trailer**" means a non-motorized trailer, including a farm wagon or farm implement, designed to be towed on public roads by an **auto** and not being used:
    a. for commercial purposes;
    b. as an office, store, or for display purposes; or
    c. as a passenger conveyance.

15. "**Transportation network company**" means a corporation, partnership, sole proprietorship, or other entity that uses any online-enabled application, software, website or system to connect drivers with clients or passengers to facilitate and/or provide transportation or delivery services for compensation or a fee.

16. "**We**," "**us**" and "**our**" mean the underwriting company providing the insurance, as shown on the **declarations page**.

7. **You** and **your** mean:
   a. a person shown as a named insured on the **declarations page**; and
   b. the spouse of a named insured if residing in the same household at the time of the loss.

## **PART I—LIABILITY TO OTHERS**

### **INSURING AGREEMENT**

If **you** pay the premium for this coverage, **we** will pay damages for **bodily injury** and **property damage** for which an **insured person** becomes legally responsible because of an accident.

**We** will also pay for **property damage** to a **rental vehicle** or **loaner vehicle** caused by an accident that occurs while such vehicle is being used by **you** or a **relative**. (Note: If **you** have purchased this coverage under this policy, **you** may not need to purchase additional coverage from a rental company.)

Damages include prejudgment interest awarded against an **insured person**.

**We** will settle or defend, at **our** option, any claim for damages covered by this Part I.

### **ADDITIONAL DEFINITIONS**

When used in this Part I:
1. "**Insured person**" means:
   a. **you**, a **relative**, or a **rated resident** with respect to an accident arising out of the ownership, maintenance or use of an **auto** or a **trailer**;
   b. any person with respect to an accident arising out of that person's use of a **covered auto** with the permission of **you**, a **relative**, or a **rated resident**;
   c. any person or organization with respect only to vicarious liability for the acts or omissions of a person described in a. or b. above; and
   d. any "Additional Interest" shown on the **declarations page** with respect only to its liability for the acts or omissions of a person described in a. or b. above.
2. "**Loaner vehicle**" means a motor vehicle temporarily loaned to **you** as a replacement for a **covered auto** being serviced or repaired, that is a:
   a. **passenger vehicle**, including a motor home;
   b. pickup truck with a manufacturer's nominal rated carrying capacity of three-fourths ton or less;
   c. van, other than a commuter van, with a manufacturer's nominal rated carrying capacity of three-fourths ton or less; or
   d. truck with a registered gross vehicle weight of 26,000 pounds or less;
   regardless of whether you are charged a fee for the use of the motor vehicle, provided that any fee charged is based on a period of time not to exceed one month.
   A **loaner vehicle** does not include a vehicle subject to an agreement:
   (i)  with a purchase or buyout option; or

3

(ii) which otherwise functions as a substitute for the purchase of a motor vehicle.

3. "**Passenger vehicle**" means any motor vehicle designed and used for carrying not more than 15 persons including the driver. **Passenger vehicle** does not include:
   a. motorcycles, motor scooters, and buses; or
   b. vehicles rented to others or used as a public or livery conveyance for passengers.

4. "**Rental vehicle**" means a motor vehicle, rented by **you** at a daily, weekly, or monthly rate for a period of time not exceeding one month, that is a:
   a. **passenger vehicle**, including a motor home;
   b. pickup truck with a manufacturer's nominal rated carrying capacity of three-fourths ton or less;
   c. van, other than a commuter van, with a manufacturer's nominal rated carrying capacity of three-fourths ton or less; or
   d. truck with a registered gross vehicle weight of 26,000 pounds or less.

   A **rental vehicle** does not include a motor vehicle subject to an agreement:
   (i) with a purchase or buyout option; or
   (ii) which otherwise functions as a substitute for the purchase of a motor vehicle.

## ADDITIONAL PAYMENTS

In addition to **our** limit of liability, **we** will pay for an **insured person**:

1. all expenses **we** incur in the settlement of any claim or defense of any lawsuit;
2. interest accruing after entry of judgment, until **we** have paid, offered to pay, or deposited in court, that portion of the judgment which does not exceed **our** limit of liability. This does not apply if **we** have not been given notice of suit or the opportunity to defend an **insured person**;
3. the premium on any appeal bond or attachment bond required in any lawsuit **we** defend. **We** have no duty to purchase a bond in an amount exceeding **our** limit of liability, and **we** have no duty to apply for or furnish these bonds;
4. up to \$250 for a bail bond required because of an accident resulting in **bodily injury** or **property damage** covered under this Part I. **We** have no duty to apply for or furnish this bond;
5. prejudgment interest and costs entered in a judgment against the **insured person**, as determined under Minnesota Statute §549.09, on that portion of the principal amount of the judgment that is within the applicable Limit of Liability; and
6. reasonable expenses, including loss of earnings up to \$200 per day, incurred at **our** request.

## EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART I.

Coverage under this Part I, including **our** duty to defend, will not apply to any **insured person** for:

1. **bodily injury** or **property damage** arising out of the ownership, maintenance or

4

use of any vehicle or trailer while being used:

    a. to carry persons or property for compensation or a fee;

    b. for retail or wholesale delivery, including, but not limited to, the pickup, transport or delivery of magazines, newspapers, mail or food; or

    c. for **ride-sharing activity**.

    This exclusion does not apply to:

    a. shared-expense car pools; or

    b. volunteer activities where the **insured person** is not receiving compensation or a fee for such activities;

2. any liability assumed under any contract or agreement by **you**, a **relative**, or a **rated resident**. However, this exclusion does not apply to liability for **property damage** to a **rental vehicle** or **loaner vehicle**;

3. **bodily injury** to an employee of that **insured person** arising out of or within the course of employment. This exclusion does not apply to domestic employees if benefits are neither paid nor required to be provided under workers' compensation, disability benefits, or similar laws;

4. **bodily injury** or **property damage** arising out of an accident involving any vehicle while being maintained or used by a person while employed or engaged in any **auto business**. This exclusion does not apply to:

    a. **you**, a **relative**, a **rated resident**, or an agent or employee of **you**, a **relative**, or a **rated resident**, when using a **covered auto**; or

    b. property damage to a rental vehicle or loaner vehicle while **you** or a **relative** are using such vehicle;

5. **bodily injury** or **property damage** resulting from, or sustained during practice or preparation for:

    a. any pre-arranged or organized racing, stunting, speed or demolition contest or activity; or

    b. any driving activity conducted on a permanent or temporary racetrack or racecourse.

    However, this exclusion does not apply to a rally held in whole or in part on public roads;

6. **bodily injury** or **property damage** due to a nuclear reaction or radiation;

7. **bodily injury** or **property damage** for which insurance:

    a. is afforded under a nuclear energy liability insurance contract; or

    b. would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;

8. **bodily injury** or **property damage** caused by an intentional act of that **insured person**, or at the direction of that **insured person**, even if the actual injury or damage is different than that which was intended or expected;

9. **property damage** to any property owned by, rented to, being transported by, used by, or in the charge of that **insured person**. This exclusion does not apply to:

    a. a rented residence or a rented garage; or

    b. **you** or a **relative** while using a **rental vehicle** or **loaner vehicle**;

10. **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any vehicle owned by **you** or furnished or available for **your** regular use, other than a **covered auto** for which this coverage has been purchased;

11. **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any vehicle owned by a **relative** or a **rated resident** or furnished or available for the regular use of a **relative** or a **rated resident**, other than a **covered auto** for which this coverage has been purchased. This exclusion does not apply to **your** maintenance or use of such vehicle;

12. **bodily injury** or **property damage** arising out of **your**, a **relative's**, or a **rated resident's** use of a vehicle, other than a **covered auto**, without the permission of the owner of the vehicle or the person in lawful possession of the vehicle;

13. **bodily injury** or **property damage** arising out of the use of a **covered auto** while leased or rented to others or given in exchange for any compensation, including while being used in connection with a **personal vehicle sharing program**. This exclusion does not apply to the operation of a **covered auto** by **you**, a **relative**, or a **rated resident**;

14. punitive or exemplary damages; or

15. **bodily injury** or **property damage** caused by, or reasonably expected to result from, a criminal act or omission of that **insured person**. This exclusion applies regardless of whether that **insured person** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include traffic violations.

## LIMITS OF LIABILITY

The limit of liability shown on the **declarations page** for liability coverage is the most **we** will pay regardless of the number of:
1. claims made;
2. **covered autos**;
3. **insured persons**;
4. lawsuits brought;
5. vehicles involved in the accident; or
6. premiums paid.

If **your declarations page** shows a split limit:
1. the amount shown for "each person" is the most **we** will pay for all damages due to **bodily injury** to one person resulting from any one accident;
2. subject to the "each person" limit, the amount shown for "each accident" is the most **we** will pay for all damages due to **bodily injury** sustained by two or more persons in any one accident; and
3. the amount shown for "property damage" is the most **we** will pay for the total of all **property damage** resulting from any one accident. However, where the amount available for **property damage** is less than $35,000, the coverage available for all **property damage** resulting from any one accident to a **rental vehicle** or **loaner vehicle** will be $35,000.

The "each person" limit of liability applies to the total of all claims made for **bodily injury** to a person and all claims of others derived from such **bodily injury**, including, but not limited to, emotional injury or mental anguish resulting from the **bodily injury** of another

6

or from witnessing the **bodily injury** to another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

If the **declarations page** shows that "combined single limit" or "CSL" applies, the amount shown is the most **we** will pay for the total of all damages resulting from any one accident. However, without changing this limit of liability, **we** will comply with any law that requires **us** to provide any separate limits.

No one is entitled to duplicate payments for the same elements of damages.

**We** will not pay under this Part I any expenses paid or payable under Part II—Medical Payments Coverage.

If multiple auto policies issued by **us** are in effect for **you**, **we** will pay no more than the highest limit of liability for this coverage available under any one policy.

The amount payable under this Part I as damages due to **bodily injury** shall not include the value of personal injury protection benefits paid or payable, or which would be payable but for any applicable deductible.

An **auto** and attached **trailer** are considered one **auto**. Therefore, the limits of liability will not be increased for an accident involving an **auto** that has an attached **trailer**.

### PROOF OF INSURANCE LAWS

When **we** certify this policy as proof of insurance, this policy will comply with the law to the extent required. The **insured person** must reimburse **us** if **we** make a payment that **we** would not have made if this policy was not certified as proof of insurance.

### OTHER INSURANCE

If there is any other applicable liability insurance or bond, **we** will pay only **our** share of the damages. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide for a vehicle or trailer, other than a:
a.  **covered auto**; or
b.  **loaner vehicle** owned by an **auto business**;
will be excess over any other collectible insurance, self-insurance, or bond.

Any coverage **we** provide for **property damage** to a **loaner vehicle** not owned by the facility servicing or repairing a **covered auto** will be on a primary basis with respect to **property damage** to the **loaner vehicle**.

### OUT-OF-STATE COVERAGE

If an accident to which this Part I applies occurs in any state, territory or possession of the United States of America or any province or territory of Canada, other than the one

7

in which a **covered auto** is principally garaged, and the state, province, territory or possession has:

1.  a financial responsibility or similar law requiring limits of liability for **bodily injury** or **property damage** higher than the limits shown on the **declarations page**, this policy will provide the higher limits; or
2.  a compulsory insurance or similar law requiring a non-resident to maintain insurance whenever the non-resident uses an **auto** in that state, province, territory or possession, this policy will provide the greater of:
    a.  the required minimum amounts and types of coverage; or
    b.  the limits of liability under this policy.

## PART II—PERSONAL INJURY PROTECTION

### INSURING AGREEMENT

If **you** pay the premium for this coverage, **we** will pay reasonable and necessary **covered expenses** incurred because of **bodily injury**:

1.  caused by an accident;
2.  sustained by an **insured person**; and
3.  arising out of the ownership, operation, maintenance, or use of a **motor vehicle**; or as a result of being struck by a motorcycle either as a pedestrian or while **occupying** a **motor vehicle**.

### ADDITIONAL DEFINITIONS

When used in this Part II:

1.  "**Covered expenses**" means:
    a.  **medical expenses**;
    b.  **income loss** (unless the **insured person** elects not to have this coverage);
    c.  **replacement services loss**;
    d.  **survivor's economic loss**;
    e.  **survivor's replacement services loss**; and
    f.  **funeral expenses**.
2.  "**Family member**" means a person residing in **your** household who is:
    a.  related to **you** by blood, marriage, or adoption, including a spouse, ward, stepchild, or foster child; or
    b.  a minor in **your** custody, or in the custody of a person related to **you** who resides in **your** household.

    A person resides in **your** household if that person's home is usually in the same family unit as **you**, even though temporarily living elsewhere.
3.  "**Funeral expenses**" means reasonable expenses, not exceeding $2,000, for funeral and burial services, including expenses for cremation or delivery under the Minnesota Uniform Anatomical Gift Act.
4.  "**Income loss**" means compensation for eighty-five percent (85%) of loss of income resulting from the **insured person's** inability to work on a regular basis because of **bodily injury**. For an **insured person** who is self-employed, "income loss" means

8

compensation for eighty-five percent (85%) of either:

    a.   loss of income; or
    b.   the costs incurred in hiring substitute employees to perform tasks that are nec-
         essary to maintain the income of the **insured person**, which are normally
         performed by the **insured person**, and which cannot be performed because
         of the **bodily injury**.

"**Income loss"** also includes compensation for lost unemployment benefits in an
amount equal to the unemployment benefits otherwise payable, if the **insured per-
son**:

    (i)   is unemployed at the time of the **bodily injury** and is receiving or is eli-
          gible to receive unemployment benefits; and
    (ii)  loses eligibility for unemployment benefits because of the inability of the
          **insured person** to work because of the **bodily injury**.

Payment for **income loss** shall cease when the **insured person** is no longer dis-
abled or upon the death of the **insured person**. Unless an additional amount is
shown on the **declarations page** for **income loss**, or unless **you** elect the Stacked
Personal Injury Protection Option, the most **we** will pay for **income loss** is $250 per
week.

5.  "**Insured person**" means:
    a.   **you,** or any **family member** who is not identified by name as an insured in any
         other contract issued in compliance with the Minnesota No-Fault Automobile Insurance Act, sustaining **bodily injury**:
         (i)   while **occupying** a **motor vehicle**; or
         (ii)  while a pedestrian sustaining bodily injury as a result of an accident involv-
               ing a **motor vehicle**, or when struck by a motorcycle, while a pedestrian; or
    b.   any other person sustaining **bodily injury**:
         (i)   while **occupying** a **covered auto**; or
         (ii)  as a pedestrian sustaining bodily injury as a result of an accident involving
               a **covered auto**, while a pedestrian.

6.  "**Medical expenses**" means reasonable expenses accruing during the lifetime of
    the **insured person** for necessary:
    a.   medical, hospital, nursing, extended care, surgical, optical, dental, chiropractic,
         x-ray, and rehabilitative services, including prosthetic devices and prescription
         drugs;
    b.   ambulance services and all other transportation expenses incurred in traveling
         to receive such services or treatment; and
    c.   sign interpreting and language translation services related to the receipt of
         medical, surgical, x-ray, optical, dental, chiropractic, hospital, extended care,
         nursing, and rehabilitative services, other than such services provided by a
         **family member** of the **insured person**.

"**Medical expenses**" also include necessary remedial treatment and services rec-
ognized and permitted under the laws of Minnesota for an **insured person** who
relies upon spiritual means through prayer alone for healing in accordance with that
person's religious beliefs. However, "**medical expenses**" do not include the portion
of any charge for a room in any hospital, clinic, nursing home, or extended care

9

facility, not including intensive care facilities, in excess of the regular daily rate for semi-private accommodations customarily charged by the institution in which the **insured person** is confined.

7. "**Motor vehicle**" means any vehicle that is:
   a. self-propelled by an engine or motor;
   b. used primarily on public roads, highways, or other streets for the transportation of persons or property; and
   c. required to be registered under Chapter 168 of the Minnesota Statutes, as amended.

   A non-motorized **trailer** with one or more wheels is also considered a "**motor vehicle**" while connected to or being towed by a **motor vehicle**.

8. "**Replacement services loss**" means reasonable expenses incurred, beginning eight days after the date of the accident, in obtaining usual and necessary replacement services in lieu of those services the **insured person** would have performed, without income, for personal benefit or for the benefit of the **insured person's** household had the **insured person** not sustained **bodily injury**. If the **insured person** normally provides for the care of a home, with or without children, on a full-time basis, payment for replacement services loss shall equal the greater of:
   a. the reasonable value of such care and maintenance; or
   b. the reasonable expenses incurred in obtaining usual and necessary replacement services for the care and maintenance of the home.

   The most **we** will pay for replacement services loss is $200 per week. Payment for replacement services loss shall cease when the **insured person** is no longer disabled or when the **insured person** dies.

9. "**Survivor's economic loss**" means loss, accruing after an **insured person's** death, of money or tangible things of economic value, not including services, that the **insured person's** surviving dependents would have received from the **insured person** for their support during their dependency if the **insured person** had not died as the result of **bodily injury** sustained in the accident. Payment for **survivor's economic loss** shall be made only if the death occurs within one year of the date of the accident. The most **we** will pay for **survivor's economic loss** is $200 per week. Eligibility for **survivor's economic loss** benefits ends:
   a. for the surviving spouse of the **insured person** on the date the spouse remarries;
   b. for any child of the **insured person** who is not physically or mentally incapacitated from earning when that child attains the age of majority, marries, or otherwise becomes emancipated; and
   c. for any person when that person dies.

10. "**Survivor's replacement services loss**" means expenses reasonably incurred by surviving dependents of an **insured person,** after the death of the **insured person,** to obtain ordinary and necessary services in lieu of those the **insured person** would have performed for their benefit if the **insured person** had not died as the result of **bodily injury** sustained in the accident. The most **we** will pay for **survivor's replacement services loss** is $200 per week. Eligibility for **survivor's replacement services loss** benefits ends:
    a. for the surviving spouse of the **insured person** on the date the spouse remarries;
    b. for any child of the **insured person** who is not physically or mentally inca-

10

pacitated from earning when that child attains the age of majority, marries, or otherwise becomes emancipated; and

c. for any person when that person dies.

## **EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART II.**

No coverage shall be provided under this Part II for:

1. **bodily injury** to any person while engaged in the business of repairing, servicing, or otherwise maintaining **motor vehicles** unless the **bodily injury** occurs off the business premises;
2. **bodily injury** to any person while loading or unloading a **motor vehicle** while not **occupying** the **motor vehicle**;
3. **bodily injury** to any person while **occupying** a motorcycle;
4. **bodily injury** sustained by any person while a pedestrian if the accident occurs outside the State of Minnesota. This exclusion does not apply to **you** or a **family member**;
5. any person who converted or misappropriated the **motor vehicle**. This exclusion also applies to claims for **survivor's economic loss** and **survivor's replacement services loss** that would otherwise be payable to a surviving dependent of the **insured person** who converts or misappropriates a **motor vehicle**. However, this exclusion does not apply to **you** or **a family member**;
6. **bodily injury** to any person resulting from, or sustained during practice or preparation for:
   a. any pre-arranged or organized racing, stunting, speed, or demolition contest or activity; or
   b. any driving activity conducted on a permanent or temporary racetrack or racecourse.

   This exclusion also applies to claims for **survivor's economic loss** and **survivor's replacement services loss** that would otherwise be payable to a surviving dependent of the **insured person**. However, this exclusion does not apply to a rally held in whole or in part on public roads;
7. any person who intentionally causes or attempts to cause **bodily injury**. This exclusion also applies to claims for **survivor's economic loss** and **survivor's replacement services loss** that would otherwise be payable to a surviving dependent of the **insured person**;
8. **income loss** for an otherwise eligible **insured person** who is age 65 years or older for whom **you** have waived **income loss** benefits;
9. **bodily injury** to an **insured person** arising out of the maintenance or use of a **motor vehicle**, other than a **covered auto,** while it is:
   a. used in the business of carrying persons or property; or
   b. furnished by the employer of **you** or a **family member**;
      provided that the security required by the Minnesota No-Fault Automobile Insurance Act is in effect for that **motor vehicle**, and the **bodily injury** is sustained while not **occupying** another **motor vehicle** involved in the accident. However, this exclusion shall not apply to:
      (i) **bodily injury** to any person while **occupying** a commuter van;

11

(ii) **bodily injury** to any person while **occupying** a vehicle being used to transport children as part of a family or group family day care program;

(iii) **bodily injury** to any person while **occupying** a vehicle being used to transport children to school or to a school-sponsored activity;

(iv) **bodily injury** to any person who resides in the State of Minnesota, while **occupying** a bus while it is in operation within the State of Minnesota; or

(v) **bodily injury** to any person who is a passenger in a taxi;

10. **property damage**, including **property damage** to a **motor vehicle** or its contents;

11. **bodily injury** sustained by any person while occupying a **covered auto** while it is being used for **ride-sharing activity**; or

12. to any person while **occupying** a **covered auto** while leased or rented to others or given in exchange for any compensation, including while being used in connection with a **personal vehicle sharing program**. This exclusion does not apply to the operation of a **covered auto** by **you**, a **relative**, or a **rated resident**.

## LIMITS OF LIABILITY

The total limit of liability shown on the **declarations page** is the most **we** will pay for all **covered expenses** incurred because of **bodily injury** to any one **insured person** sustained in any one accident, regardless of the number of:

1. claims made;
2. **covered autos**;
3. **insured persons**;
4. lawsuits brought;
5. **motor vehicles** involved in an accident;
6. premiums paid; or
7. policies issued by **us**.

Subject to the Limit of Liability for all claims under this Part II:

1. the limit of liability for **medical expenses** incurred because of **bodily injury** to any one **insured person** sustained in any one accident shall not exceed $20,000 unless a greater amount is shown on the **declarations page** or **you** have elected the Stacked Personal Injury Protection Option; and

2. the limit of liability for the aggregate of all **income loss**, **replacement services loss**, **survivor's economic loss**, **survivor's replacement services loss**, and **funeral expenses** incurred because of **bodily injury** to any one **insured person** sustained in any one accident shall not exceed $20,000 unless **you** have elected the Stacked Personal Injury Protection Option.

Any amount paid or payable for **income loss** under this Part II shall be reduced by the amount of any income:

1. received by the **insured person** from substitute work actually performed; or

2. that the **insured person** would have earned in available appropriate substitute work that the **insured person** was capable of performing but unreasonably failed to undertake.

Payment for **covered expenses** under this Part II is subject to the following:

1. No payment for **covered expenses** shall be made for any alleged recurrence of a **bodily injury** following a lapse in the period of disability and medical treatment

12

of one year or more. No payment for **covered expenses** shall be made for any alleged recurrence of a **bodily injury** following a lapse in the period of disability or in medical treatment of less than one year unless the **insured person** provides **us** with reasonable medical proof of such recurrence. In no event shall the aggregate amount payable for all **covered expenses** incurred because of **bodily injury** to the **insured person** sustained in any one accident exceed **our** total limit of liability.

2.   Any amount paid or payable for **survivor's replacement services loss** under this Part II shall be reduced by the amount of any expenses avoided by the surviving dependents of the **insured person** because of the death of the **insured person**.

Any **covered expenses** payable under this Part II because of **bodily injury** to **you** or a **family member** shall be reduced by any deductible shown on the **declarations page** under Personal Injury Protection. If more than one person to whom a deductible applies sustains **bodily injury** in the same accident, only one deductible shall apply to the claims for personal injury protection benefits, and the deductible shown on the **declarations page** shall be allocated equally to reduce the benefits payable to persons under this Part II to whom the deductible applies.

No one will be entitled to duplicate payments under this policy for the same elements of damages.

### STACKED PERSONAL INJURY PROTECTION OPTION

If **you** insure more than one **motor vehicle**, whether they are insured by **us** or by different insurers, **you** may elect to stack coverage under this Part II. If **you** have elected stacked benefits and paid the premium for stacked coverage, and the **declarations page** shows that **you** have elected to stack coverage under this Part II, then **our** limit of liability for all **covered expenses** incurred because of **bodily injury** sustained by **you** or a **family member** in any one accident shall be the sum of the minimum Basic Economic Loss Benefits required, as weekly benefits and as aggregate benefits, under the Minnesota No-Fault Automobile Insurance Act, multiplied by the number of **covered autos**, plus any coverage **you** purchased from **us** in excess of the minimum coverage required under the Minnesota No-Fault Automobile Insurance Act.

If **you** have not elected stacked benefits under this Part II, nor paid the premium for stacked benefits, the limits of liability for Personal Injury Protection for two or more vehicles may not be added together to determine the limit of coverage available because of **bodily injury** to **you** or a **family member** sustained in any one accident. If **you** have not elected stacked benefits, no coverage under this Part II may be stacked during the policy period nor under any renewal policy unless **you** notify **us** of a changed election to stack benefits and **you** pay **us** the additional premium for the increased coverage.

### OTHER INSURANCE

Coverage under this Part II is subject to the following:
1.   No one shall be entitled to payment under this Part II that would duplicate or supplement any amounts paid or payable under any other personal injury protection insurance, including self-insurance.

13

2. Any coverage **we** provide for personal injury protection benefits for **bodily injury** to an **insured person** that arises out of the maintenance or use of a **motor vehicle**:
   a. used in the business of carrying persons or property; or
   b. furnished by the employer of **you** or a **family member**;

   shall be excess to other applicable coverage for personal injury protection benefits if permitted by Minnesota Statute §65B.47. This provision does not apply to a **covered auto**. This provision also does not apply to the following: a commuter van; a vehicle being used to transport children as part of a family or group family day care program; a vehicle being used to transport children to school or to a school-sponsored activity; a bus while it is in operation within the state of Minnesota as to any Minnesota resident who is an insured as defined in section 65B.43, subdivision 5; a passenger in a taxi; or a taxi driver.

3. No one shall be entitled to payment under this Part II that would duplicate any amounts paid or payable under any workers' compensation law.

4. Any coverage available pursuant to a workers' compensation law shall be primary and coverage under this Part II shall be excess.

## ADDITIONAL DUTIES AFTER LOSS

An **insured person** who has undertaken a procedure or treatment for rehabilitation or a course of rehabilitative occupational training, other than a medical rehabilitation procedure or treatment, shall notify **us** within 60 days after expenses exceeding $1,000 have been incurred for such procedure, treatment, or training. If notice is not given to **us** within 60 days, payment for such procedure, treatment, or training shall be limited to the greater of:

1. $1,000; or

2. the reasonable expenses incurred for such procedure, treatment, or training after notice is given to **us** and within the 60 days before the notice is given.

However, **we** will not limit payment for such procedure, treatment, or training if the **insured person** failed to provide **us** with notice of the procedure, treatment or training as the result of excusable neglect.

## ARBITRATION

If **we** deny a claim under this Part II, **you** may demand that the claim be submitted to arbitration if the amount of the claim is $10,000 or less when the demand is made. Arbitration will be in accordance with the Rules Of Procedure For No-Fault Arbitration adopted by the Minnesota Supreme Court and administered by the American Arbitration Association (AAA). Coverage questions may not be decided by arbitration.

The arbitrator's fees shall be paid as directed by the arbitrator. The expenses of any witness shall be paid by the party producing the witness. All other expenses of the arbitration shall be shared equally unless the parties agree otherwise or the arbitrator assesses all or part of the expenses against any specified party or parties.

14

### INSURING AGREEMENT—UNINSURED MOTORIST COVERAGE

If **you** pay the premium for this coverage, **we** will pay for damages that an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of **bodily injury**:
1. sustained by an **insured person**;
2. caused by an accident; and
3. arising out of the ownership, maintenance or use of an **uninsured motor vehicle**.

### INSURING AGREEMENT—UNDERINSURED MOTORIST COVERAGE

If **you** pay the premium for this coverage, **we** will pay for damages that an **insured person** is entitled to recover from the owner or operator of an **underinsured motor vehicle** because of **bodily injury**:
1. sustained by an **insured person**;
2. caused by an accident; and
3. arising out of the ownership, maintenance, or use of an **underinsured motor vehicle**.

An **insured person** must notify **us** in writing at least 30 days before entering into any settlement with the owner or operator of an **underinsured motor vehicle**, or that person's liability insurer. In order to preserve **our** right of subrogation, **we** may elect to pay within 30 days any sum offered in settlement by, or on behalf of, the owner or operator of the **underinsured motor vehicle**. If **we** do this, **you** agree to assign to **us** all rights that **you** have against the owner or operator of the **underinsured motor vehicle**.

Any judgment or settlement for damages, which arises out of a lawsuit against an owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle**, is not binding on **us** if **we** have not been given:
1. reasonable notice of the commencement of the lawsuit against the operator or owner of the **uninsured motor vehicle** or **underinsured motor vehicle**; and
2. an opportunity to defend **our** interests in that lawsuit.

**We** shall not be bound by any judgment other than a final judgment rendered as the result of a trial, after any appeals taken from that judgment.

### ADDITIONAL DEFINITIONS

When used in this Part III:
1. "**Insured person**" means:
   a. **you**, a **relative**, or a **rated resident**;
   b. any person while operating a **covered auto** with the permission of **you**, a **relative**, or a **rated resident**;
   c. any person **occupying**, but not operating, a **covered auto**; and

15

  d. any person who is entitled to recover damages covered by this Part III because of **bodily injury** sustained by a person described in a., b. or c. above.

2. "**Underinsured motor vehicle**" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident, but its limit of liability for **bodily injury** is less than the damages that an **insured person** is entitled to recover from the owner or operator of the motor vehicle because of **bodily injury**.

   An "**underinsured motor vehicle**" does not include any vehicle or equipment:
   a. owned by **you** or a **relative**;
   b. operated on rails or crawler treads;
   c. designed mainly for use off public roads, while not on public roads;
   d. while used as a residence or premises;
   e. that is a **covered auto**;
   f. not required to be registered as a motor vehicle;
   g. that is an **uninsured motor vehicle**; or
   h. not owned by **you** or a **relative** that is operated by **you** or a **relative** with the permission of its owner.

3. "**Uninsured motor vehicle**" means a land motor vehicle or trailer of any type:
   a. to which no bodily injury liability bond or policy applies at the time of the accident;
   b. to which a bodily injury liability bond or policy applies at the time of the accident, but the bonding or insuring company:
      (i) denies coverage; or
      (ii) is or becomes insolvent;
   c. to which a bodily injury liability bond or policy applies at the time of the accident, but its limit of liability for bodily injury is less than the minimum limit of liability for bodily injury specified by the financial responsibility law of the state in which the **covered auto** is principally garaged; or
   d. whose owner or operator cannot be identified at the time of the accident or at any time subsequent to the accident, and which causes an accident resulting in **bodily injury** to an **insured person** provided that the **insured person**, or someone on his or her behalf, reports the accident to the police or civil authority within 24 hours or as soon as practicable after the accident.

   An "**uninsured motor vehicle**" does not include any vehicle or equipment:
   a. owned by **you**, a **relative**, or a **rated resident** or furnished or available for the regular use of **you**, a **relative**, or a **rated resident**;
   b. owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer that denies coverage, cannot provide the minimum amounts required by law, or becomes insolvent;
   c. operated on rails or crawler treads;
   d. designed mainly for use off public roads, while not on public roads;
   e. while located for use as a residence or premises;
   f. that is a **covered auto**; or
   g. which is an **underinsured motor vehicle**.

16

**EXCLUSIONS – READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EX-CLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART III.**

Coverage under this Part III will not apply:

1.  to **bodily injury** sustained by any person while using or **occupying**:
    a.  a **covered auto** while being used:
        (i)   to carry persons or property for compensation or a fee;
        (ii)  for retail or wholesale delivery, including, but not limited to, the pickup, transport or delivery of magazines, newspapers, mail or food; or
        (iii) for **ride-sharing activity**.
        This exclusion does not apply to:
        (i)   shared-expense car pools; or
        (ii)  damages sustained by you or a relative up to the minimum uninsured or underinsured motorist coverage limits required by Minnesota law; or
    b.  a motor vehicle that is owned by or available for the regular use of **you**, a **relative**, or a **rated resident**. This exclusion does not apply to a **covered auto** that is insured under this Part III;
2.  to **bodily injury** sustained by **you**, a **relative**, or a **rated resident** while using any vehicle, other than a **covered auto**, without the permission of the owner of the vehicle or the person in lawful possession of the vehicle;
3.  directly or indirectly to benefit any insurer or self-insurer under any of the following or similar laws:
    a.  workers' compensation law; or
    b.  disability benefits law;
4.  to any punitive or exemplary damages;
5.  to **bodily injury** sustained by any person if that person or the legal representative of that person settles without **our** written consent; or
6.  to **bodily injury** arising out of the use of a **covered auto** while being used in connection with a **personal vehicle sharing program**. This exclusion does not apply to the operation of a **covered auto** by **you**, a **relative**, or a **rated resident**.

**LIMITS OF LIABILITY**

The limit of liability shown on the **declarations page** for Uninsured/Underinsured Motorist Coverage is the most **we** will pay regardless of the number of:

1.  claims made;
2.  **covered autos**;
3.  **insured persons**;
4.  lawsuits brought;
5.  vehicles involved in the accident;
6.  premiums paid; or
7.  policies involved.

If **your declarations page** shows a split limit:

1.  the amount shown for "each person" is the most **we** will pay for all damages due to **bodily injury** to one person; and

17

2.  subject to the "each person" limit, the amount shown for each accident is the most **we** will pay for all damages due to **bodily injury** sustained by two or more persons in any one accident.

The "each person" limit of liability includes the total of all claims made for **bodily injury** to an **insured person** and all claims of others derived from such **bodily injury**, including, but not limited to, emotional injury or mental anguish resulting from the **bodily injury** of another or from witnessing the **bodily injury** to another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

If the **declarations page** shows that "combined single limit" or "CSL" applies, the amount shown is the most **we** will pay for the total of all damages resulting from any one accident. However, without changing this total limit of liability, **we** will comply with any law that requires **us** to provide any separate limits.

The amount of damages payable under this Part III will be reduced by:
1.  all sums paid because of **bodily injury** by or on behalf of any persons or organizations that may be legally responsible;
2.  all sums paid under Part I—Liability To Others;
3.  the value of Personal Injury Protection benefits paid or payable, or which would be payable but for any applicable deductible;
4.  all sums paid or payable because of **bodily injury** under any disability benefits law or similar law;
5.  all sums paid for similar damages under a plan or policy of insurance under a workers' compensation or similar law; and
6.  all sums paid or payable under any other applicable policy of uninsured or underinsured motorist insurance coverage, subject to the provisions of this Part III.

The Limits of Liability under this Part III shall be reduced by all sums paid under any other policy of uninsured or underinsured motorist coverage

No one will be entitled to duplicate payments for the same elements of damages.

If multiple auto policies issued by **us** are in effect for **you**, **we** will pay no more than the highest limit of liability for this coverage available under any one policy.

**OTHER INSURANCE**

If there is other applicable uninsured or underinsured motorist coverage, the following order of priority shall apply:

First Priority:
An **insured person** who sustains **bodily injury** while **occupying** a **covered auto** shall be entitled to recover uninsured or underinsured motorist benefits under this policy before recovery of uninsured or underinsured motorist benefits available from policies of insurance which do not apply to the **covered auto**.

18

Any insurance **we** provide for an **insured person** who sustains **bodily injury** while **occupying** a motor vehicle or motorcycle, other than a **covered auto**, shall be excess over any other uninsured or underinsured motorist coverage available to the **insured person** from the insurer of the motor vehicle or motorcycle the **insured person** was **occupying** at the time of the accident. Any excess insurance **we** provide for an **insured person** who sustains **bodily injury** while **occupying** a motor vehicle or motorcycle, other than a **covered auto**, is subject to **our** Limit of Liability, and further, is available only to the extent by which the highest available limit of liability available under one excess uninsured or underinsured motorist coverage available to the **insured person** exceeds the limit of liability of the uninsured or underinsured motorist coverage available to the **insured person** from the insurer of the motor vehicle or motorcycle occupied by the **insured person**. If there is similar insurance of the same priority, **we** will pay only **our** share of the damages. **Our** share is the proportion that **our** Limit of Liability bears to the total of all available coverage limits of the similar insurance of the same priority.

**Bodily injury** while not **occupying** a motor vehicle or motorcycle:
1. If an **insured person** other than **you** is injured while not **occupying** a motor vehicle or motorcycle, the coverage provided under this policy shall be excess to any uninsured or underinsured motorist coverage provided by a policy under which that **insured person** is a named insured, and that **insured person** is entitled to select as the total uninsured or underinsured motorist benefits recoverable from all sources, only one limit of liability for one motor vehicle of the uninsured or underinsured motorist coverage available to that **insured person**.
2. If **you** are injured while not **occupying** a motor vehicle or motorcycle, and are also a named insured under any other policy, **you** are entitled to select as the total uninsured or underinsured motorist benefits recoverable from all sources only one limit of liability for one vehicle of the uninsured or underinsured motorist coverage available to **you**, and then **our** coverage will pay the proportionate share that **our** limits bear to the total available uninsured or underinsured motorist coverage of the same priority.

Duplication of benefits:
**We** will not pay for any damages that would duplicate any payment made for damages under other insurance.

Nonstacking of benefits:
The limits of liability for uninsured or underinsured motorist coverage for two or more vehicles or two or more policies may not be combined, stacked or added together to determine the amount of coverage available for **bodily injury** to any one **insured person** sustained in any one accident.

## ARBITRATION

If **we** and an **insured person** cannot agree on:
1. the legal liability of the operator or owner of an **uninsured motor vehicle** or **underinsured motor vehicle**; or

19

2. the amount of the damages sustained by the **insured person**;
this will be determined by arbitration if **we** and the **insured person** mutually agree to
arbitration prior to the expiration of the bodily injury statute of limitations in the state in
which the accident occurred.

Any action or lawsuit against **us** for Uninsured Motorist Coverage must be commenced
within six years from the date of the accident. Any action or lawsuit against **us** for Un-
derinsured Motorist Coverage must be commenced within six years from the date of
settlement with, or judgment against, the owner or operator of an **underinsured motor
vehicle**.

In the event of arbitration, each party will select an arbitrator. The two arbitrators will
select a third. If the two arbitrators cannot agree on a third arbitrator within 30 days, then
on joint application by the **insured person** and **us**, the third arbitrator will be appointed
by a court having jurisdiction.

Each party will pay the costs and fees of its arbitrator and any other expenses it incurs.
The costs and fees of the third arbitrator will be shared equally.

Unless both parties agree otherwise, arbitration will take place in the county in which
the **insured person** resides. Local rules of procedure and evidence will apply.

A decision agreed to by two of the arbitrators will be binding with respect to a determina-
tion of:
1. the legal liability of the operator or owner of an **uninsured motor vehicle** or **under-
insured motor vehicle**; and
2. the amount of the damages sustained by the **insured person**.
The arbitrators will have no authority to award an amount in excess of the limit of liability.

**We** and an **insured person** may agree to an alternate form of arbitration.

## PART IV—DAMAGE TO A VEHICLE

### INSURING AGREEMENT—COLLISION COVERAGE

If **you** pay the premium for this coverage, **we** will pay for sudden, direct and accidental
loss to a:
1. **covered auto**, including an attached **trailer**; or
2. **non-owned auto**;
and its **custom parts or equipment**, resulting from **collision**.

In addition, **we** will pay the reasonable cost to replace any child safety seat damaged in
an accident to which this coverage applies.

20

If **you** pay the premium for this coverage, **we** will pay for sudden, direct and accidental loss to a:

1. **covered auto**, including an attached **trailer**; or
2. **non-owned auto**;

and its **custom parts or equipment**, that is not caused by **collision**.

A loss not caused by **collision** includes:

1. contact with an animal (including a bird);
2. explosion or earthquake;
3. fire;
4. malicious mischief or vandalism;
5. missiles or falling objects;
6. riot or civil commotion;
7. theft or larceny;
8. windstorm, hail, water or flood; or
9. breakage of glass not caused by **collision**.

In addition, **we** will pay for:

1. reasonable transportation expenses incurred by **you** if a **covered auto** is stolen; and
2. loss of use damages that **you** are legally liable to pay if a **non-owned auto** is stolen.

A combined maximum of $900, not exceeding $30 per day, will apply to these additional benefits. The additional benefit for transportation expenses will not apply if **you** purchased Rental Reimbursement Coverage for the stolen **covered auto**.

Coverage for transportation expenses and loss of use damages begins 48 hours after **you** report the theft to **us** and ends the earliest of:

1. when the **auto** has been recovered and returned to **you** or its owner;
2. when the **auto** has been recovered and repaired;
3. when the **auto** has been replaced; or
4. 72 hours after **we** make an offer to settle the loss if the **auto** is deemed by **us** to be a total loss.

**We** must receive written proof of transportation expenses and loss of use damages.

## INSURING AGREEMENT—ADDITIONAL CUSTOM PARTS OR EQUIPMENT COVERAGE

**We** will pay for sudden, direct and accidental loss to **custom parts or equipment** on a **covered auto** for which this coverage has been purchased. This coverage applies only if **you** have purchased both Comprehensive Coverage and Collision Coverage for that **covered auto** and the loss is covered under one of those coverages. This coverage applies in addition to any coverage automatically provided for **custom parts or equip-ment** under Comprehensive Coverage or Collision Coverage.

21

**SAFETY GLASS COVERAGE**

If **you** pay the premium for Full Comprehensive Safety Glass Coverage for a **covered auto**, **non-owned auto**, or **trailer**, **we** will pay for comprehensive **loss** to the safety glass of that **covered auto**, **non-owned auto**, or **trailer** under Comprehensive Coverage without applying any deductible for that glass **loss**.

## INSURING AGREEMENT—RENTAL REIMBURSEMENT COVERAGE

**We** will reimburse rental charges incurred when **you** rent an **auto** from a rental agency or auto repair shop due to a loss to a **covered auto** for which Rental Reimbursement Coverage has been purchased. This coverage applies only if **you** have purchased both Comprehensive Coverage and Collision Coverage for that **covered auto** and the loss is covered under one of those coverages.

Additional fees or charges for insurance, damage waivers, optional equipment, fuel, or accessories are not covered.

This coverage is limited to the each day limit shown on the **declarations page** for a maximum of 30 days.

If Rental Reimbursement Coverage applies, no other coverage under this policy for rental expenses will apply.

Rental charges will be reimbursed beginning:
1. when the **covered auto** cannot be driven due to a loss; or
2. if the **covered auto** can be driven, when **you** deliver the **covered auto** to an auto repair shop or one of **our** Service Centers for repairs due to the loss;
and ending the earliest of:
1. when the **covered auto** has been returned to **you**;
2. when the **covered auto** has been repaired;
3. when the **covered auto** has been replaced;
4. 72 hours after **we** make an offer to settle the loss if the **covered auto** is deemed by **us** to be a total loss; or
5. when **you** incur 30 days worth of rental charges.

**You** must provide **us** written proof of **your** rental charges to be reimbursed.

## INSURING AGREEMENT—LOAN/LEASE PAYOFF COVERAGE

If **you** pay the premium for this coverage, and the **covered auto** for which this coverage was purchased is deemed by **us** to be a total loss, **we** will pay, in addition to any amounts otherwise payable under this Part IV, the difference between:
1. the actual cash value of the **covered auto** at the time of the total loss; and
2. any greater amount the owner of the **covered auto** is legally obligated to pay under a written loan or lease agreement to which the **covered auto** is subject at the time

CASE 0:22-cv-00866-NEB-TNL   Doc. 1-1   Filed 04/08/22   Page 27 of 44

of the total loss, reduced by:

   a.  unpaid finance charges or refunds due to the owner for such charges;
   b.  excess mileage charges or charges for wear and tear;
   c.  charges for extended warranties or refunds due to the owner for extended warranties;
   d.  charges for credit insurance or refunds due to the owner for credit insurance;
   e.  past due payments and charges for past due payments; and
   f.  collection or repossession expenses.

However, **our** payment under this coverage shall not exceed the limit of liability shown on the **declarations page**. The limit of liability is a percentage of the actual cash value of the **covered auto** at the time of the loss.

This coverage applies only if **you** have purchased both Comprehensive Coverage and Collision Coverage for that **covered auto** and the loss is covered under one of those coverages.

### INSURING AGREEMENT—PET INJURY COVERAGE

If **you** have purchased Collision coverage for at least one **covered auto** under **your** policy, and if **your pet** sustains injury or death while inside a **covered auto** or **non-owned auto** at the time of a loss covered under Collision or Comprehensive coverage, **we** will provide:
1.  up to \$1,000 for reasonable and customary veterinary fees incurred by **you**, a **relative**, or a **rated resident** if **your pet** is injured in, or as a direct result of, the covered loss; or
2.  a \$1,000 death benefit if **your pet** dies in, or as a direct result of, the covered loss, less any payment **we** made toward veterinary expenses for **your pet**.

In the event of a covered loss due to the theft of a **covered auto** or **non-owned auto**, **we** will provide the death benefit provided **your pet** is inside that auto at the time of the theft and **your pet** is not recovered.

### ADDITIONAL DEFINITIONS

When used in this Part IV:
1.  "**Collision**" means the upset of a vehicle or its impact with another vehicle or object.
2.  "**Custom parts or equipment**" means equipment, devices, accessories, enhancements and changes, other than those that are offered by the manufacturer specifically for that **auto** model, or that are installed by the auto dealership as part of the original sale of a new **auto**, that:
   a.  are permanently installed or attached; and
   b.  alter the appearance or performance of the **auto**.
3.  "**Mechanical parts**" means operational parts on a vehicle that wear out over time or have a finite useful life or duration typically shorter than the life of the vehicle as a whole. **Mechanical parts** do not include external crash parts, wheels, paint, or windshields and other glass.

4. "**Non-owned auto**" means an **auto** that is not owned by or furnished or available for the regular use of **you**, a **relative**, or a **rated resident** while in the custody of or being operated by **you**, a **relative**, or a **rated resident** with the permission of the owner of the **auto** or the person in lawful possession of the **auto**. However, a "**non-owned auto**" under this Part IV does not include a **rental vehicle** or **loaner vehicle** as defined in Part I—Liability To Others.

5. "**Your pet**" means any dog or cat owned by **you**, a **relative**, or a **rated resident**.

## EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EX-CLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART IV.

Coverage under this Part IV will not apply for loss:

1. to any vehicle while being used:
   a. to carry persons or property for compensation or a fee;
   b. for retail or wholesale delivery, including, but not limited to, the pickup, transport or delivery of magazines, newspapers, mail or food; or
   c. for **ride-sharing activity**.
   
   This exclusion does not apply to shared-expense car pools;

2. to a **non-owned auto** while being maintained or used by a person while employed or engaged in any **auto business**;

3. to any vehicle resulting from, or sustained during practice or preparation for:
   a. any pre-arranged or organized racing, stunting, speed or demolition contest or activity; or
   b. any driving activity conducted on a permanent or temporary racetrack or race-course;

4. to any vehicle for which insurance:
   a. is afforded under a nuclear energy liability insurance contract; or
   b. would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;

5. to any vehicle caused by an intentional act committed by or at the direction of **you**, a **relative**, a **rated resident**, or the owner of a **non-owned auto**, even if the actual damage is different than that which was intended or expected;

6. to a **covered auto** while it is leased or rented to others or given in exchange for compensation, including while being used in connection with a **personal vehicle sharing program**. This exclusion does not apply to the operation of a **covered auto** by **you**, a **relative**, or a **rated resident**;

7. due to destruction or confiscation by governmental or civil authorities of any vehicle because **you**, any **relative**, or any **rated resident** engaged in illegal activities;

8. to any vehicle that is due and confined to:
   a. wear and tear;
   b. freezing;
   c. mechanical, electrical or electronic breakdown or failure; or
   d. road damage to tires.
   
   This exclusion does not apply if the damage results from the theft of a vehicle;

9. to portable equipment, devices, accessories, and any other personal effects that are not permanently installed. This includes, but is not limited to:
   a. tapes, compact discs, cassettes, DVDs, and other recording or recorded media;

24

b. any case or other container designed for use in storing or carrying tapes, compact discs, cassettes, DVDs, or other recording or recorded media;

c. any device used for the detection or location of radar, laser, or other speed measuring equipment or its transmissions; and

d. CB radios, telephones, two-way mobile radios, DVD players, personal computers, personal digital assistants, or televisions;

10. to any vehicle for diminution of value;

11. to any vehicle caused directly or indirectly by:
   a. war (declared or undeclared) or civil war;
   b. warlike action by any military force of any government, sovereign, or other authority using military personnel or agents. This includes any action taken to hinder or defend against an actual or expected attack; or
   c. insurrection, rebellion, revolution, usurped power, or any action taken by a governmental authority to hinder or defend against any of these acts;

12. to any vehicle caused directly or indirectly by:
   a. any accidental or intentional discharge, dispersal or release of radioactive, nuclear, pathogenic or poisonous biological material; or
   b. any intentional discharge, dispersal or release of chemical or hazardous material for any purpose other than its safe and useful purpose; or

13. to any vehicle caused by, or reasonably expected to result from, a criminal act or omission of **you**, a **relative**, a **rated resident**, or the owner of a **non-owned auto**. This exclusion applies regardless of whether **you**, the **relative**, the **rated resident**, or the owner of the **non-owned auto** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include traffic violations.

## LIMITS OF LIABILITY

IMPORTANT: Please note that the dollar amount shown on **your declarations page** for Stated Amount is not necessarily the amount that **you** will receive for Comprehensive Coverage or Collision Coverage. Please refer to the provisions outlined below.

1. The limit of liability for loss to a **covered auto**, **non-owned auto**, or **custom parts or equipment** is the lowest of:
   a. the actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible;
   b. the amount necessary to replace the stolen or damaged property reduced by the applicable deductible;
   c. the amount necessary to repair the damaged property to its pre-loss condition reduced by the applicable deductible; or
   d. the Stated Amount shown on the **declarations page** for that **covered auto**.
   However, the most **we** will pay for loss to:
   a. **custom parts or equipment** is $1,000 unless **you** purchased Additional Custom Parts or Equipment Coverage ("ACPE"). If **you** purchased ACPE, the most **we** will pay is $1,000 plus the amount of ACPE **you** purchased.
   b. a **trailer** is the limit of liability shown on the **declarations page** for that **trailer**. If the **trailer** is not shown on the **declarations page**, the limit of liability is $500.

25

2. Payments for loss to a **covered auto**, **non-owned auto**, or **custom parts or equipment** are subject to the following provisions:

   a. If coverage applies to a **non-owned auto**, **we** will provide the broadest coverage applicable to any **covered auto** shown on the **declarations page**.

   b. If **you** have elected a Stated Amount for a **covered auto**, the Stated Amount is the most **we** will pay for all loss to that **covered auto**, including its **custom parts or equipment**.

   c. Coverage for **custom parts or equipment** will not cause **our** limit of liability for loss to an **auto** under this Part IV to be increased to an amount in excess of the actual cash value of the **auto**, including its **custom parts or equipment**.

   d. In determining the amount necessary to repair damaged property to its pre-loss condition, the amount to be paid by **us**:

      (i) will not exceed a competitive price that is fair and reasonable within the local industry at large for the cost of repair or replacement parts and equipment; and

      (ii) will be based on a competitive price that is fair and reasonable within the local industry at large for the cost of repair or replacement parts and equipment which may be new, reconditioned, remanufactured or used, including, but not limited to:

         (a) original manufacturer parts or equipment; and

         (b) nonoriginal manufacturer parts or equipment.

         However, **we** will not require, as a condition of a payment of a claim, that the damaged parts be replaced with parts other than original equipment parts.

   e. To determine the amount necessary to repair or replace the damaged property as referred to in subsection 1., the total cost of necessary repair or replacement may be reduced by unrepaired prior damage. Unrepaired prior damage includes broken, cracked or missing parts; rust; dents; scrapes; gouges; and peeling paint. The reduction for unrepaired prior damage is the cost of labor, parts and materials necessary to repair or replace damage, deterioration, defects, or wear and tear on exterior body parts, windshields and other glass, wheels, and paint, that existed prior to the accident and that is eliminated as a result of the repair or replacement of property damaged in the loss.

   f. To determine the amount necessary to repair or replace the damaged property as referred to in subsection 1., an adjustment may be made for betterment or depreciation and physical condition on:

      (i) batteries;

      (ii) tires;

      (iii) engines and transmissions, if the engine has greater than 80,000 miles; and

      (iv) any other **mechanical parts** that are nonfunctioning or inoperative.

      **We** will not make an adjustment for the labor costs associated with the replacement or repair of these parts.

   g. The actual cash value is determined by the market value, age, and condition of the vehicle at the time the loss occurs.

3. No deductible will apply to a loss to window glass when the glass is repaired instead of replaced.

4. Duplicate recovery for the same elements of damages is not permitted.

The following additional limits of liability apply to Pet Injury coverage:

   a.  The most **we** will pay for all damages in any one loss is a total of $1,000 re-
       gardless of the number of dogs or cats involved.
   b.  If **your pet** dies in, or as a direct result of, a covered loss, **we** will provide a
       death benefit of $1,000, less any payment **we** made toward veterinary ex-
       penses for **your pet**.
   c.  No deductible shall apply to this coverage.

## PAYMENT OF LOSS

**We** may, at **our** option:
1.  pay for the loss in money; or
2.  repair or replace the damaged or stolen property.

At **our** expense, **we** may return any recovered stolen property to **you** or to the address
shown on the **declarations page**, with payment for any damage resulting from the theft.
**We** may keep all or part of the property at the agreed or appraised value.

**We** may settle any loss with **you** or the owner or lienholder of the property.

## NO BENEFIT TO BAILEE

Coverage under this Part IV will not directly or indirectly benefit any carrier or other
bailee for hire.

## LOSS PAYABLE CLAUSE

Payment under this Part IV for a loss to a **covered auto** will be made according to **your**
interest and the interest of any lienholder shown on the **declarations page** or designat-
ed by **you**. At **our** option, payment may be made to both jointly, or to either separately.
However, if the **covered auto** is not a total loss, **we** may make payment to **you** and the
repairer of the **covered auto**.

The lienholder's interest will not be protected:
1.  where fraud, misrepresentation, material omission, or intentional damage resulting
    in a denial of coverage by **us** has been committed by or at the direction of **you** or
    any person seeking coverage; or
2.  where the loss is otherwise not covered under the terms of this policy.
If this policy is cancelled, nonrenewed or voided, the interest of any lienholder under this
agreement will also terminate.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss, **we** will pay only **our** share of the loss.
**Our** share is the proportion that **our** limit of liability bears to the total of all applicable
limits. However, any insurance **we** provide for a **non-owned auto**, or **trailer** not shown

on the **declarations page**, will be excess over any other collectible source of recovery including, but not limited to:

1.  any coverage provided by the owner of the **non-owned auto** or **trailer**;
2.  any other applicable physical damage insurance; and
3.  any other source of recovery applicable to the loss.

## ARBITRATION

If **we** deny a claim under this Part IV for loss to a **covered auto**, the claim shall be submitted to binding arbitration if the amount of the claim is $10,000 or less when the demand is made. Arbitration will be in accordance with the Rules Of Procedure For No-Fault Arbitration adopted by the Minnesota Supreme Court and administered by the American Arbitration Association (AAA).

The arbitrator's fees shall be paid as directed by the arbitrator. The expenses of any witness shall be paid by the party producing the witness. All other expenses of the arbitration shall be shared equally unless the parties agree otherwise or the arbitrator assesses all or part of the expenses against any specified party or parties. **You** waive **your** rights under the Appraisal section of this Part IV for any claim submitted to arbitration.

## APPRAISAL

If **we** and **you** agree that the amount of the **loss** is greater than $10,000, but cannot agree as to the amount of a loss, then **we** or **you** may demand an appraisal of the loss. Within 30 days of any demand for an appraisal, each party shall appoint a competent appraiser and shall notify the other party of that appraiser's identity. The appraisers will determine the amount of loss. If they fail to agree, the disagreement will be submitted to a qualified umpire chosen by the appraisers. If the two appraisers are unable to agree upon an umpire within 15 days, **we** or **you** may request that a judge of a court of record, in the county where **you** reside, select an umpire. The appraisers and umpire will determine the amount of loss. The amount of loss agreed to by both appraisers, or by one appraiser and the umpire, will be binding. **You** will pay **your** appraiser's fees and expenses. **We** will pay **our** appraiser's fees and expenses. All other expenses of the appraisal, including payment of the umpire if one is selected, will be shared equally between **us** and **you**. Neither **we** nor **you** waive any rights under this policy by agreeing to an appraisal.

## PART V—ROADSIDE ASSISTANCE COVERAGE

## INSURING AGREEMENT

If **you** pay the premium for this coverage, **we** will pay for **our** authorized service representative to provide the following services when necessary due to a **covered emergency**:

1.  towing of a **covered disabled auto** to the nearest qualified repair facility; and
2.  labor on a **covered disabled auto** at the place of disablement.

If a **covered disabled auto** is towed to any place other than the nearest qualified repair facility, **you** will be responsible for any additional charges incurred.

## ADDITIONAL DEFINITIONS

When used in this Part V:
1. "**Covered disabled auto**" means a **covered auto** for which this coverage has been purchased that sustains a **covered emergency**.
2. "**Covered emergency**" means a disablement that is a result of:
   a. mechanical or electrical breakdown;
   b. battery failure;
   c. insufficient supply of fuel, oil, water, or other fluid;
   d. flat tire;
   e. lock-out; or
   f. entrapment in snow, mud, water or sand within 100 feet of a road or highway.

## EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART V.

Coverage under this Part V will not apply to:
1. more than three **covered emergencies** for any single **covered auto** in a six-month period;
2. the cost of purchasing parts, fluid, lubricants, fuel, or replacement keys, or the labor to make replacement keys;
3. installation of products or material not related to the disablement;
4. labor not related to the disablement;
5. labor on a **covered disabled auto** for any time period in excess of 60 minutes per disablement;
6. towing or storage related to impoundment, abandonment, illegal parking, or other violations of law;
7. assistance with jacks, levelers, airbags or awnings;
8. labor or repair work performed at a service station, garage, or repair shop;
9. auto storage charges;
10. disablement that occurs on roads not regularly maintained, sand beaches, open fields, or areas designated as not passable due to construction, weather, or earth movement;
11. mounting or removing of snow tires or chains;
12. tire repair;
13. disablement that results from an intentional or willful act or action by **you**, a **relative**, or the operator of a **covered disabled auto**;
14. any **covered auto** while being used in connection with **ride-sharing activity**;
15. any **covered auto** while being used in connection with a **personal vehicle sharing program**; or
16. a trailer.

29

When service is rendered by a provider in the business of providing roadside assistance and towing services, other than one of **our** authorized service representatives, **we** will pay only reasonable charges, as determined by **us**, for:

1. towing of a **covered disabled auto** to the nearest qualified repair facility; and
2. labor on a **covered disabled auto** at the place of disablement;

which is necessary due to a **covered emergency**.

### OTHER INSURANCE

Any coverage provided under this Part V for service rendered by an unauthorized service provider will be excess over any other collectible insurance or towing protection coverage.

## PART VI—DUTIES IN CASE OF AN ACCIDENT OR LOSS

**You** or the person seeking coverage must promptly report each accident or loss even if **you** or the person seeking coverage is not at fault. **You** or the person seeking coverage must provide **us** with all accident or loss information, including time, place, and how the accident or loss happened. **You** or the person seeking coverage must also obtain and provide **us** the names and addresses of all persons involved in the accident or loss, the names and addresses of any witnesses, and the license plate numbers of the vehicles involved. **You** may also report an accident or loss to **your** insurance agent.

If **you** or the person seeking coverage cannot identify the owner or operator of a vehicle involved in the accident, or if theft or vandalism has occurred, **you** or the person seeking coverage must notify the police within 24 hours or as soon as practicable.

A person seeking coverage must:

1. cooperate with **us** in any matter concerning a claim or lawsuit;
2. provide any written proof of loss **we** may reasonably require;
3. allow **us** to take signed and recorded statements, including sworn statements and examinations under oath, which **we** may conduct outside the presence of **you** or any other person seeking coverage, and answer all reasonable questions **we** may ask as often as **we** may reasonably require;
4. promptly call to notify **us** about any claim or lawsuit and send **us** any and all legal papers relating to the claim or suit;
5. attend hearings and trials as **we** require;
6. take reasonable steps after a loss to protect the **covered auto**, or any other vehicle for which coverage is sought, from further loss. **We** will pay reasonable expenses incurred in providing that protection. If failure to provide such protection results in further loss, any additional damages will not be covered under this policy;
7. allow **us** to have the damaged **covered auto**, or any other damaged vehicle for which coverage is sought, inspected and appraised before its repair or disposal;

8.	submit to medical examinations at **our** expense by doctors **we** select as often as **we** may reasonably require; and

9.	authorize **us** to obtain medical and other records.

### PART VII—GENERAL PROVISIONS

### POLICY PERIOD AND TERRITORY

This policy applies only to accidents and losses occurring during the policy period shown on the **declarations page** and that occur within a state, territory or possession of the United States of America, or a province or territory of Canada, or while a **covered auto** or **trailer** shown on the **declarations page** is being transported between their ports.

### CHANGES

This policy contract, **your** insurance application (which is made a part of this policy as if attached hereto), the **declarations page**, and all endorsements to this policy issued by **us**, contain all the agreements between **you** and **us**. Subject to the following, the terms of this policy may not be changed or waived except by an endorsement issued by **us**.

The premium for this policy is based on information **we** received from **you** and other sources. **You** agree to cooperate with **us** in determining if this information is correct and complete, and to promptly notify **us** if it changes during the policy period. If this information is determined by **us** to be incorrect, incomplete, or if it changes during the policy period, **you** agree that **we** may adjust **your** policy information and premium accordingly. Changes that may result in a premium adjustment are contained in **our** rates and rules. These include, but are not limited to, **you**, a **relative**, or a **rated resident** obtaining a driver's license or operator's permit, or changes in:

1.	the number, type or use classification of **covered autos**;
2.	the persons who regularly operate a **covered auto**;
3.	the persons of legal driving age residing in **your** household;
4.	the residents in **your** household;
5.	an operator's marital status;
6.	**your** mailing address and **your** residence address;
7.	the principal garaging address of any **covered auto**;
8.	coverage, deductibles, or limits of liability; or
9.	rating territory or discount eligibility.

The coverage provided in **your** policy may be changed only by the issuance of a new policy or an endorsement by **us**. However, if during the policy period **we** broaden any coverage afforded under the current edition of **your** policy without additional premium charge, that change will automatically apply to **your** policy as of the date the coverage change is implemented in **your** state.

If **you** ask **us** to delete a vehicle from this policy, no coverage will apply to that vehicle as of the date and time **you** ask **us** to delete it.

31

**DUTY TO REPORT CHANGES**

**You** must promptly report to **us** all changes, including additions and deletions, in policy information. This includes, but is not limited to, changes in:
1. **your** mailing address or **your** residence address;
2. the principal garaging address of any **covered auto**;
3. the residents in **your** household;
4. the persons of legal driving age residing in **your** household;
5. the persons who regularly operate a **covered auto**;
6. an operator's marital status; or
7. the driver's license or operator's permit status of **you**, a **relative**, or a **rated resident.**

**SETTLEMENT OF CLAIMS**

**We** may use estimating, appraisal, or injury evaluation systems to assist **us** in adjusting claims under this policy and to assist **us** in determining the amount of damages, expenses, or loss payable under this policy. Such systems may be developed by **us** or a third party and may include computer software, databases, and specialized technology.

**TERMS OF POLICY CONFORMED TO STATUTES**

If any provision of this policy fails to conform to the statutes of the state listed on **your** application as **your** residence, the provision shall be deemed amended to conform to such statutes. All other provisions shall be given full force and effect. Any disputes as to the coverages provided or the provisions of this policy shall be governed by the law of the state listed on **your** application as **your** residence.

**TRANSFER OF INTEREST**

The rights and duties under this policy may not be transferred to another person without **our** written consent. However, if a named insured shown on the **declarations page** dies, this policy will provide coverage until the end of the policy period for the legal representative of the named insured, while acting as such, and for persons covered under this policy on the date of the named insured's death.

**FRAUD OR MISREPRESENTATION**

**We** may deny coverage for an accident or loss if **you** or a person seeking coverage has knowingly concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim. However, this shall not affect coverage under Part I—Liability To Others.

**PAYMENT OF PREMIUM AND FEES**

If **your** initial premium payment is by check, draft, electronic funds transfer, or similar form of remittance, coverage under this policy is conditioned on payment to **us** by

the financial institution. If the financial institution upon presentment does not honor the check, draft, electronic funds transfer, or similar form of remittance, this policy may, at **our** option, be deemed void from its inception. This means **we** will not be liable under this policy for any claims or damages that would otherwise be covered if the check, draft, electronic funds transfer, or similar form of remittance had been honored by the financial institution. Any action by **us** to present the remittance for payment more than once shall not affect **our** right to void this policy.

In addition to premium, fees may be charged on **your** policy. **We** may charge fees for installment payments, late payments, and other transactions. Payments made on **your** policy will be applied first to fees, then to premium due.

### CANCELLATION

**You** may cancel this policy during the policy period by calling or writing **us** and stating the future date **you** wish the cancellation to be effective.

**We** may cancel this policy during the policy period by mailing a notice of cancellation to the named insured shown on the **declarations page** at the last known address appearing in **our** records.

**We** will give at least 10 days notice of cancellation if:
1. **we** cancel during the first 59 days of the initial policy period; or
2. the policy is cancelled for nonpayment of premium.

**We** will give at least 30 days notice of cancellation in all other cases.

**We** may cancel this policy for any reason if the notice is mailed within the first 59 days of the initial policy period.

After this policy is in effect for more than 59 days, or if this is a renewal or continuation policy, **we** may cancel only for one or more of the following reasons:
1. nonpayment of premium;
2. material misrepresentation or fraud by **you** with respect to any material fact in the procurement, continuation, change or renewal of this policy;
3. material misrepresentation or fraud in the submission of any claim under this policy;
4. the named insured failed to fully disclose all motor vehicle accidents and moving traffic violations of the named insured for the preceding 36 months, or failed to disclose any information requested in the application necessary to determine the proper rate or whether the named insured is an acceptable risk;
5. the named insured knowingly failed to give any required written notice of loss or notice of any lawsuit brought against the named insured, or, when requested, refused to cooperate in the investigation of a claim or defense of a lawsuit;
6. the named insured, or any other operator who is not a named insured under another policy who either resides in the same household as the named insured or who customarily operates a **covered auto**:
   a. within the 36 months prior to the notice of cancellation, had their driver's license

33

under suspension or revocation because the person committed a moving traffic violation, or because the person refused to be tested under Minnesota Statute §169A.20, subdivision 1, paragraph (a) (which relates to a person under the influence of alcohol);

b. is, or becomes, subject to epilepsy or heart attacks, and such individual does not produce a written opinion from a physician testifying to that person's medical ability to operate a motor vehicle safely;

c. has an accident record, conviction record (criminal or traffic), physical or mental condition, any one or all of which are such that the person's operation of an automobile might endanger the public safety;

d. has been convicted of, or forfeited bail for, any of the following during the 24 months immediately preceding the notice of cancellation:
   (i) criminal negligence in the use or operation of a motor vehicle;
   (ii) assault arising out of the operation of a motor vehicle;
   (iii) operating a motor vehicle in an intoxicated condition or while under the influence of drugs;
   (iv) leaving the scene of an accident without stopping to report;
   (v) making false statements in an application for a driver's license; or
   (vi) theft or unlawful taking of a motor vehicle; or

e. has been convicted of, or forfeited bail for, one or more violations of any law, ordinance, or rule justifying a revocation of a driver's license within the 18 months immediately preceding the notice of cancellation; or

7. the **covered auto** is:
   a. so mechanically defective that its operation might endanger public safety;
   b. used to carry persons for compensation or a fee, not including use as a shared-expense car pool;
   c. used in the business of transportation of flammables or explosives;
   d. an authorized emergency vehicle;
   e. subject to an inspection law and has not been inspected or, if inspected, has failed to pass inspection within the period specified under such law; or
   f. substantially changed in type or condition during the policy period, increasing the risk substantially, including, but not limited to, conversion to a commercial type vehicle, dragster, or sports car or so as to give clear evidence of a use other than its original use.

Proof of mailing will be sufficient proof of notice. If this policy is cancelled, coverage will not be provided as of the effective date and time shown in the notice of cancellation. For purposes of cancellation, this policy is neither severable nor divisible. Any cancellation will be effective for all coverages for all persons and all vehicles.

**CANCELLATION REFUND**

Upon cancellation, **you** may be entitled to a premium refund.

If this policy is cancelled, any refund due will be computed on a daily pro rata basis. If **you** cancel this policy, any unearned premium will be returned to **you** within 30 days

following **our** receipt of **your** request for cancellation. If **we** cancel this policy, any unearned premium will be returned to **you** by the cancellation effective date.

### NONRENEWAL

If neither **we** nor one of **our** affiliates offers to renew or continue this policy, **we** will mail notice of nonrenewal to the named insured shown on the **declarations page** at the last known address appearing in **our** records. Proof of mailing will be sufficient proof of notice. Notice will be provided at least 60 days before the end of the policy period.

The effective date of the nonrenewal of a policy with an annual policy term will be the anniversary date of the original policy effective date

### AUTOMATIC TERMINATION

If **we** or an affiliate offers to renew or continue this policy and **you** or **your** representative does not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due will mean that **you** have not accepted **our** offer.

If **you** obtain other insurance on a **covered auto**, any similar insurance provided by this policy will terminate as to that **covered auto** on the effective date of the other insurance.

If a **covered auto** is sold or transferred to someone other than **you** or a **relative**, any insurance provided by this policy will terminate as to that **covered auto** on the effective date of the sale or transfer.

### LEGAL ACTION AGAINST US

**We** may not be sued unless there is full compliance with all the terms of this policy.

**We** may not be sued for payment under Part I—Liability To Others until the obligation of an insured person under Part I to pay is finally determined either by judgment after trial against that person or by written agreement of the insured person, the claimant, and **us**. No one will have any right to make **us** a party to a lawsuit to determine the liability of an insured person.

If **we** retain salvage, **we** have no duty to preserve or otherwise retain the salvage for any purpose, including evidence for any civil or criminal proceeding.

The bankruptcy or insolvency of an insured person shall not relieve **us** of any obligation under this policy. If an execution on a final judgment against an insured person for damages covered by Part I—Liability To Others is returned unsatisfied, then the judgment creditor shall have a right of action on this policy against **us** to the same extent that the insured person would have had if the insured person had paid the final judgment.

35

**We** are entitled to the rights of recovery that the insured person to whom payment was made has against another, to the extent of **our** payment. That insured person may be required to sign documents related to the recovery and must do whatever else **we** require to help **us** exercise those recovery rights, and do nothing after an accident or loss to prejudice those rights. However, **we** are not entitled to recover against the other person if that other person is insured for the same loss under any policy of insurance issued by **us**. **We** may not recover against an insured person if the loss was caused by a non-intentional act of the insured person.

**We** may assert a right of recovery for payments **we** have made under Part II—Personal Injury Protection as follows:
1. to the extent that **our** right of recovery will prohibit a duplication of benefits or reimbursement of the same loss;
2. if the claim for which **we** made a payment arose out of:
   a. an intentional tort;
   b. strict or statutory liability; or
   c. negligence other than negligence in the maintenance, use or operation of a "motor vehicle" as defined in Part II—Personal Injury Protection; or
3. against a reparation obligor providing residual liability coverage on a commercial vehicle of more than 5,500 pounds curb weight if negligence in the operation, maintenance, or use of the commercial vehicle was the direct and proximate cause of the injury for which the basic economic loss benefits were paid or payable by **us**, but for any applicable deduction provisions of Minnesota Insurance Code §65B.51, Subdivision 1.

However, **we** may not assert rights of recovery against:
1. any person who was using a **covered auto** with **your** express or implied permission for any payment made under Part IV—Damage To A Vehicle; or
2. the owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle** if an insured person under Part III—Uninsured/Underinsured Motorist Coverage provides **us** with written notice 30 days prior to entering into a settlement that an offer of settlement has been made by, or on behalf of, the owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle**, and **we** do not elect to pay to the insured person an amount equal to the amount offered in full settlement by, or on behalf of, the owner or operator of the **uninsured motor vehicle** or **underinsured motor vehicle**.

When an insured person has been paid by **us** and also recovers from another, the amount recovered will be held by the insured person in trust for **us** and reimbursed to **us** to the extent of **our** payment. If **we** are not reimbursed, **we** may pursue recovery of that amount directly against that insured person. However, where the total amount recovered by the insured person from all sources did not fully compensate that insured person for all damages due to **bodily injury**, **we** shall have no right to reimbursement from the insured person.

If an insured person recovers from another without **our** written consent, the insured person's right to payment under Part IV—Damage To A Vehicle will no longer exist.

**Our** rights under this provision with respect to all coverages, other than **bodily injury** and **property damage** liability, do not apply against a person who is 21 years of age or older who:
1. at a premises that person had control over and being in a reasonable position to prevent the consumption of alcoholic beverages, knowingly or recklessly permitted the consumption of alcoholic beverages that caused the intoxication of a person under 21 years of age; or
2. sold, bartered, furnished or gave to, or purchased alcoholic beverages for a person under 21 years of age that caused intoxication of that person;

and that intoxicated person caused the injury, loss or damage for which payment was made under this policy.

If **we** elect to exercise **our** rights of recovery against another, **we** will also attempt to recover any deductible incurred by an insured person under this policy unless **we** are specifically instructed by that person not to pursue the deductible. **We** have no obligation to pursue recovery against another for any loss not covered by this policy.

**We** reserve the right to compromise or settle the deductible and property damage claims against the responsible parties for less than the full amount. **We** also reserve the right to incur reasonable expenses and attorney fees in pursuit of the recovery.

If the total recovery is less than the total of **our** payment and the deductible, **we** will reduce reimbursement of the deductible based on the proportion that the actual recovery bears to the total of **our** payment and the deductible. A proportionate share of collection expenses and attorney fees incurred in connection with these recovery efforts will also reduce reimbursement of the deductible.

These provisions will be applied in accordance with state law.

### JOINT AND INDIVIDUAL INTERESTS

If there is more than one named insured on this policy, any named insured may cancel or change this policy. The action of one named insured will be binding on all persons provided coverage under this policy.

### BANKRUPTCY

The bankruptcy or insolvency of an insured person will not relieve **us** of any obligations under this policy.

37



**9611D MN 0216**