# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| SHONACIE GRADY, individually and on behalf of all others similarly situated, | Case No. 22-CV-866 (NEB/TNL) |
| Plaintiff, | ORDER ON MOTION TO DISMISS |
| v. | |
| PROGRESSIVE DIRECT INSURANCE COMPANY, an Ohio corporation, | |
| Defendant. | |

Shonacie Grady alleges that her car insurer, Progressive Direct Insurance Company, undervalued her totaled 2016 Ford Focus when it settled her property-damage claim. To value her loss, Progressive Direct relied on a third party that looked at used cars similar to Grady's Ford Focus. It adjusted those cars' advertised prices based on differences in equipment, mileage, and configuration to reach a settlement amount. One of those modifications, the projected-sold adjustment ("PSA"), took haircuts off the cars' advertised prices on the assumption that buyers regularly negotiate with dealerships. Grady contends that used-car markets no longer operate this way, so Progressive Direct's PSAs improperly reduced her insurance award.

Grady brings this putative class action alleging that Progressive Direct violated the Minnesota Consumer Fraud Act ("MCFA"), Minn. Stat. § 325F.68 *et seq.*, and breached

express and implied terms of its insurance policy. (ECF No. 22 ("Compl.").) She seeks damages, an injunction, and a declaratory judgment. (*Id.*) Progressive Direct moves to dismiss. (ECF No. 35.) The Court denies the motion in part and grants it in part.

**BACKGROUND**

The Court presents the facts in the light most favorable to the non-moving party. Grady had an automobile-insurance policy ("Policy") with Progressive Direct for her 2016 Ford Focus. (Compl. ¶¶ 11, 16; *see also* ECF No. 22-2 ("Valuation Report").) After a car wreck, Grady submitted a property-damage claim. (*Id.* ¶¶ 16–17.) Progressive Direct determined Grady's car to be a "total loss." (*Id.* ¶ 18.)

Under the Policy, Progressive Direct agreed to pay for "sudden, direct, and accidental loss" to Grady's car. (ECF No. 22-1 ("Policy") at 24 (ECF pagination).) The maximum amount that it would pay was the lowest of four liability limits. (*Id.* at 29.) Relevant here, one of those limits is "the actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible." (*Id.*) The Policy explains that "actual cash value is determined by the market value, age, and condition of the vehicle at the time the loss occurs." (*Id.* at 30.) It also explains that Progressive Direct "may use estimating, appraisal, or injury evaluation systems to assist us in adjusting claims under this policy and to assist us in determining the amount of damages, expenses, or loss payable under this policy." (*Id.* at 36.)

To determine a car's actual cash value ("ACV"), Progressive Direct uses valuation reports created by a third party, Mitchell International, Inc. (Compl. ¶ 1; *see generally* Valuation Report.) The reports look at recently-sold and currently-listed cars comparable to the policyholder's car. For the listed vehicles, Mitchell takes the advertised prices and adjusts them based on differences in equipment, mileage, and configuration. (Compl. ¶ 20.) Grady generally agrees that these adjustments are appropriate. (*Id.* ¶ 28.) But one of Mitchell's modifications—the PSA—adjusts downward the advertised prices to account for buyers negotiating before the sale. (*Id.* ¶ 22.) Whether the PSAs are appropriate in today's used-car market is the basis of this lawsuit.

Grady contends that the PSAs "do not reflect market realities . . . and run contrary to customary automobile dealer practices and inventory management." (*Id.* ¶ 23.) Before the internet, advertised prices were listed on a car's physical window. Consumers could not easily compare that price to competitors' offerings. (*Id.*) Dealers would therefore price their lots "above market knowing that some consumers might be poor negotiators and they would realize an inflated profit on those sales." (*Id.* ¶ 24.) Such negotiations were commonplace. (*Id.*) But after the internet and developments in pricing software, "used car dealerships no longer price vehicles above market with room for—and the expectation of—negotiation." (*Id.* ¶ 25.) Today, negotiations are "highly atypical" and no longer "proper to include in determining ACV." (*Id.* ¶ 27.) Grady alleges that Mitchell's

primary competitor does not use PSAs, and that even Progressive Direct declines to use them when calculating ACVs in California or Washington (*Id.* ¶¶ 46–47.)

Along with outdated consumer-behavior assumptions, Grady alleges other problems with Progressive Direct's price adjustments. She contends that Progressive Direct ignores variables such as whether customers traded their car in, bought extended warranties, or financed their purchase. (*Id.* ¶ 29.) She also claims that Progressive Direct's data mistakenly excludes transactions in which a car's advertised price was equal to or less than its sold price. (*Id.* ¶¶ 30–33.) And she alleges that the data includes transactions with advertised dates that follow sold dates, an obvious error. (*Id.* ¶ 36.) Grady argues that these mishaps collectively "skew the data in favor of [Progressive Direct] to the detriment of the insureds." (*Id.* ¶ 37.)

Mitchell's report on Grady's 2016 Ford Focus estimates the base value of her car at $12,775.30. (Valuation Report at 1.) Mitchell looked at ten comparable cars. (*Id.* at 4.) Three had sold, so Mitchell did not apply PSA. (*Id.* at 6–7.) The remaining seven were listed for sale but had not yet sold. (*Id.* at 7–10.) Mitchell applied PSAs to six of those cars. (*Id.*) The PSAs adjusted downward their list prices by $814, $753, $815, $896, $827, and $893. (*Id.*; *see also* Compl. ¶ 21.) Grady contends that her car's ACV would have been $499.80 higher had Mitchell not applied those PSAs. (Compl. ¶ 49.)

Grady filed this putative class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and other Minnesota citizens who were underpaid by

4

Progressive Direct for totaled vehicles. (*Id.* ¶ 50.) She brings claims for violation of the MCFA, breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory judgment. (*Id.* ¶¶ 58–93.)

**ANALYSIS**

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court must "accept as true" all plausible factual allegations. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Though matters outside the pleading may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading." *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (citation omitted).

As noted above, Grady brings four claims: (1) violation of the MCFA, (2) breach of contract, (3) breach of the implied covenant of good faith and fair dealing, and (4) declaratory judgment.[1] (Compl. ¶¶ 58–93.) The Court addresses each claim in turn.

---

[1] The operative complaint also makes various references to violations of "Minnesota law." (Compl. ¶¶ 3, 18, 35, 76.) In her initial complaint, Grady had alleged violations of Minnesota's total-loss statute, Minn. Stat. Section 72A.201, subdivision 6(b). (ECF No. 1

5

For all, the parties agree that Minnesota law applies. The complaint also necessarily embraces the Policy and Valuation Report, so the Court considers it when addressing Progressive Direct's motion to dismiss. *Ashanti*, 666 F.3d at 1151.

I. **Minnesota Consumer Fraud Act**

Section 325F.69, subdivision 1 of the MCFA provides:

> The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided in section 325F.70.

"[A] party may be liable for fraud either by making an affirmative statement that is false or by concealing or not disclosing facts under certain circumstances." *Graphic Commc'ns Loc. 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 850 N.W.2d 682, 695 (Minn. 2014). Section 325F.69, subdivision 1 "does not apply to all allegations of fraud, but only to those where there is a nexus between the alleged fraud and the sale of merchandise." *Banbury v. Omnitrition Int'l, Inc.*, 533 N.W.2d 876, 882 (Minn. Ct. App. 1995). If a claim asserts fraud that is not connected to the sale of merchandise, Section 325F.69, subdivision 1 does not apply. *Id.*

---

¶¶ 47, 65, 73, 81, 82.) Progressive Direct moves to dismiss any lingering claim that may still exist under that provision. In her opposition papers, Grady confirms that she is not bringing a total-loss statute claim. (ECF No. 43 at 20–21.) To the extent that the complaint's "Minnesota law" references allege that cause of action, it is dismissed.

Fraud claims must satisfy a heightened pleading standard. *Cleveland v. Whirlpool Corp.*, 550 F. Supp. 3d 660, 673 (D. Minn. 2021). Under Rule 9(b) of the Federal Rules of Civil Procedure, "a party must state with particularity the circumstances constituting fraud," although knowledge may be alleged generally. "The primary purpose of th[e] particularity requirement is to enable a defendant to respond and to prepare a defense to the fraud claim." *Cleveland*, 550 F. Supp. 3d at 673. "The level of particularity required depends on the nature of a case." *E-Shops Corp. v. U.S. Bank Nat'l Ass'n*, 678 F.3d 659, 663 (8th Cir. 2012). "[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (citation omitted). Rather, "the complaint must allege 'such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.'" *Id.* (citation omitted). "In other words, the complaint must plead the 'who, what, where, when, and how' of the alleged fraud." *Id.* (citation omitted).

In support of its motion to dismiss, Progressive Direct largely argues that Grady did not plead enough factual content with particularity to allege a misrepresentation or omission "in connection with the sale" of her Policy.[2] The Court agrees.

---

[2] Progressive Direct also asserts that Grady may not sue under Minnesota's Private Attorney General Statute. The MCFA does not provide a private cause of action. *Johnson v. Bobcat Co.*, 175 F. Supp. 3d 1130, 1140 (D. Minn. 2016). Plaintiffs bringing MCFA claims must instead sue under Minnesota Statute Section 8.31 subdivision 3a. *Id.* To do so, they must allege that their cause of action benefits the public. *Khoday v. Symantec Corp.*, 858 F.

7

Grady has not adequately alleged a misrepresentation or omission "in connection with the sale" of her Policy. Minn. Stat. § 325.69F, subdiv. 1. Her complaint alleges that Progressive Direct "violated the [MCFA] by making false promises and knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary Projected Sold Adjustment to comparable vehicles." (Compl. ¶ 75.) It alleges that Grady and the putative class members "purchased [Progressive Direct's] insurance coverage in reliance on" the misrepresentations and omissions. (*Id.* ¶ 83.) And it states that "[h]ad [Progressive Direct] not engaged in the deceptive acts," Grady and the punitive class members "would not have purchased insurance coverage from" Progressive Direct. (*Id.* ¶ 84.) But Grady does not plead sufficient factual content about Progressive Direct's underlying misrepresentations or omissions at the time of the sale of her Policy. That dooms Grady's MCFA allegations, especially given Rule 9(b)'s particularity requirement.

Courts considering comparable fraud statutes have concluded similarly. For example, in *Williams v. Progressive Direct Insurance Company*, the District of Delaware considered a nearly-identical claim against Progressive Direct. -- F. Supp. 3d --, No. 22-510-MAK, 2022 WL 4482726 (D. Del. Sept. 27, 2022).[3] The case involved the Delaware

---

Supp. 2d 1004, 1016 (D. Minn. 2012). The Court need not address the public-benefit issue because it dismisses Grady's claim on other grounds.

[3] Indeed, the allegations in the *Williams* complaint and Grady's complaint are almost word for word. *See* No. 22-510-MAK, ECF No. 11 at 15–18 (D. Del. July 5, 2022).

Consumer Fraud Act. *Id.* at *3. As here, Williams alleged that Progressive Direct's PSAs are deceptive and not reflective of market realities, erroneously lowering ACVs of totaled cars that it must pay under its policies. *Id.* at *4. Like the MCFA, liability under the Delaware Consumer Fraud Act requires that fraud be "in connection with the sale, lease, receipt, or advertisement of any merchandise." *Id.* at *3 (citing 6 Del. C. § 3513(a)). Williams argued that "the method by which Progressive adjusts a total loss claim by using the arbitrary projected sold adjustment is evidence of fraud where the insured is told Progressive will insure her car up to its actual cash value." *Id.* at *5. The court disagreed, concluding that there was "no allegation Progressive made this representation or an omission when Ms. Williams purchased the Policy." *Id.*; *accord Petri v. Drive N.J. Ins.*, No. 1:21-cv-20510, 2022 WL 4483437, at *4–5 (D.N.J. Sept. 26, 2022) (concluding the same under New Jersey's fraud statute because the plaintiffs did "not adequately allege . . . fraud . . . during the marketing or sales process"); *cf. Volino v. Progressive Cas. Ins.*, No. 21 Civ. 6243 (LGS), 2022 WL 5242894, at *4 (S.D.N.Y. Oct. 6, 2022) (denying a motion to dismiss because the New York fraud statute does not require fraud in connection with the sale of merchandise).

Grady maintains that her complaint alleges at least three misrepresentations or omissions. First, she asserts that the complaint alleges fraud in Progressive Direct's Policy itself. She argues that in the Policy's ACV term, Progressive Direct misrepresented that it would pay ACV despite having no intention to follow through on that promise. Grady

9

conflates breach of contract with fraud. She does not allege fraud in the sale of the Policy; she alleges that she did not receive the full value of her benefits under Policy.

Second, Grady contends that Progressive Direct omitted that it would apply the PSAs. "[A] plaintiff bringing an action under the [MCFA] must plead . . . special circumstances that trigger a duty to disclose." *CVS Caremark*, 850 N.W.2d at 696. Two of those circumstances are at issue: "special knowledge of material facts to which the other party does not have access," and the need to "say enough to prevent the words communicated from misleading the other party." *Id.* at 695. As for the former, the complaint alleges that Progressive Direct "possessed exclusive knowledge" about the PSAs. (Compl. ¶ 81.) Such an allegation does not support a specialized-knowledge duty. *Richfield Bank & Tr. Co. v. Sjogren*, 244 N.W. 2d 648, 651 (Minn. 1976) (requiring allegations of "actual knowledge of fraudulent activity," not exclusive knowledge of certain facts). As for the latter, as discussed, Grady fails to allege any affirmative statement apart from the contract itself that would have required additional explanation.

Third, Grady makes similar fraud arguments about the Vehicle Report. But any misrepresentation or omission in the Vehicle Report was necessarily not "in connection with the sale" of Grady's Policy. The report was issued after Grady's car wreck, not when she bought the insurance. (*See* Compl. ¶ 19.)

Outside of insisting that she pleaded enough factual content, Grady's remaining arguments accurately state Minnesota law but are unresponsive to Progressive Direct's

10

motion. Grady first contends that she need not plead reliance to survive a dismissal. That is true. *Grp. Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 13 (Minn. 2001) ("Although we conclude that the legislature has eliminated the requirement of pleading and proving traditional common law reliance as an element of a statutory misrepresentation in sales action, the parties are correct that causation remains an element of such a claim."). But fraud must still be *connected* to a sale, even if Grady need not plead that she *relied* on the fraud. For example, the cases on which Grady relies included allegations of fraud in connection with the sale of goods. *See, e.g., Kinetic Co. v. Medtronic, Inc.*, 672 F. Supp. 2d 933, 938 (D. Minn. 2009) ("Medtronic continued to market the devices without disclosing this defect, resulting in patients continuing to receive these surgically-implanted devices.").

Grady's last argument is that plaintiffs need not purchase a defendant's product to bring an MCFA claim under Minnesota's Private Attorney General Statute. That is another correct statement of law. *Philip Morris*, 621 N.W. 2d at 11. Regardless, plaintiffs must still "allege[] an injury by conduct that violates . . . the substantive statute[]." *Id.* And Section 325F.69 subdivision 1 expressly requires that fraud be "in connection with the sale of any merchandise." Because the complaint fails to allege fraud in connection with a sale of merchandise, the Court grants Progressive Direct's motion to dismiss Grady's MCFA claim.

## II. Breach of Contract

"In order to state a claim for breach of contract, the plaintiff must show (1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant." *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011). The parties dispute only the third element.

Progressive Direct's initial argument is that the complaint does not specify the Policy provision that Progressive Direct breached. That is wrong. The complaint states that "under [Progressive Direct's] insurance policy . . . [it] has a duty to pay, and represents that it will pay, the ACV of a loss vehicle when adjusting total loss claims." (Compl. ¶ 3.) Progressive Direct has notice that it allegedly breached the ACV provision.

The issue, then, is whether Grady pleaded enough facts to support a breach-of-contract claim. The Eighth Circuit reversed the dismissal of a similar case involving the failure to pay ACV because of downward PSAs. *Smith v. S. Farm Bureau Cas. Ins.*, 18 F.4th 976, 981 (8th Cir. 2021). In *Smith*, as here, the plaintiff alleged that his insurer undervalued his totaled truck by applying PSAs when it had promised to pay ACV. *Id.* at 978–79. The court reasoned that the insurer had a duty under the policy to pay ACV based on the truck's "fair market value." *Id.* at 980. It noted that the complaint alleged that the insurer breached that duty by using PSAs to artificially reduce the truck's fair market value with assumptions that did not reflect market realities. *Id.* And so, the Eighth Circuit held, "[i]f

this is true, then [the insurer] did *not* consider the truck's fair market value; it considered an artificially lower value, in breach of its contractual duty, so Smith stated a claim for breach of contract based on the policy language." *Id.* at 981 (emphasis in original). Numerous district courts have denied motions to dismiss on similar grounds.[4]

As in *Smith*, Grady alleges that Progressive Direct had a contractual duty to pay the ACV of her totaled car. (Compl. ¶ 3.) The Policy states that ACV "is determined by the market value, age, and condition of the vehicle at the time the loss occurs." (Policy at 30.) Grady alleges that the PSAs "do not reflect market realities" because today's consumers no longer negotiate with dealerships on price. (Compl. ¶ 23; *see id.* ¶ 25.) Accepting these facts as true, Progressive Direct did not pay Grady the ACV of her car because it applied arbitrary PSAs.

Progressive Direct contends that Grady did not adequately plead damages. It offers two arguments. First, it notes that Grady did not allege her car's ACV, nor how much Progressive Direct paid to settle her claim. It reasons that alleging PSA values alone

---

[4] *See, e.g.*, *Williams*, 2022 WL 4482726, at *10 (denying a motion to dismiss because "allegations the application of the projected sold adjustment to reduce the value of comparable cars, which in turn reduces the base value used to calculate the market value of the total loss car plausibly states a claim for breach of contract"); *Petri*, 2022 WL 4483437, at *5–6 (same); *Chadwick v. State Farm Mut. Auto. Ins.*, No. 4:21-cv-1161-DPM, 2022 U.S. Dist. LEXIS 117926, at *1–2 (E.D. Ark. July 5, 2022) (same); *Clippinger v. State Farm Mut. Auto. Ins.*, No. 2:20-cv-02482-TLP-cgc, 2020 WL 6750357, at *6–7 (W.D. Tenn. Nov. 17, 2020) (same); *Zuern v. IDS Prop. Cas. Ins.*, No. C19-6235-MLP, 2020 WL 2114502, *4–5 (W.D. Wash. May 4, 2020) (same); *Shields v. State Farm Mut. Auto. Ins.*, No. 6:19-CV-01359, 2020 WL 838280, at *3 (W.D. La. Feb. 19, 2020) (same); *Lundquist v. First Nat'l Ins. Co. of Am.*, No. 18-5301 RJB, 2018 WL 3344791, at *5 (W.D. Wash. July 9, 2018) (same).

does not support the inference that it paid Grady less than ACV. Rather, Progressive Direct insists that Grady must allege how much she thinks her car was worth and that Progressive Direct paid her less than that amount.

The Court disagrees. Grady alleges that her "payment of ACV would have been $499.80 higher, before adding the related increase in payments for applicable sales taxes," had Progressive Direct not applied the PSAs. (Compl. ¶ 49.) In *Volino*, the complaint similarly alleged that Progressive Direct's "methodology, using the Mitchell Reports, accurately calculates actual cash value, except for the application of the allegedly invalid PSA." 2022 WL 5242894, at *2. The Southern District of New York concluded that the complaint adequately pleaded an injury because it "alleges that the amount of the PSA is the measure of underpayment, and the value Defendants calculate once the PSA is removed is the actual cash value." *Id.* So too here.

Second, Progressive Direct stresses that Grady's Valuation Report is unique from the numerous cases in which courts have denied similar motions to dismiss. Grady's valuation involved three sold cars, which do not receive a PSA. (Valuation Report at 6–7.) The average value of the three sold cars is *less than* what Progressive Direct paid to settle Grady's claim. (*See id.*) Progressive Direct asserts that Grady cannot plausibly allege that she was injured because *if* the insurer had based its valuation only on the sold cars, Grady would have received a smaller settlement.

That the average value of the sold cars is less than what Progressive Direct paid Grady does not render Grady's otherwise plausible claim implausible. Though it could have done so, Progressive Direct did not value Grady's Ford Focus based only on sold cars—it used seven listed cars as well. And it applied PSAs to six of the listed cars. Had Progressive Direct not applied those PSAs to the listed cars, Grady's ACV payment allegedly would have been $499.80 higher. (Compl. ¶ 49.) Discovery may reveal that number to be inaccurate. *See Petri*, 2022 4483437, at *5 ("Obviously, the damages Plaintiff seek are these differences—numbers which will become more precise through the discovery process.") But at the motion-to-dismiss stage, Grady has plausibly alleged that she was injured. The Court denies Progressive Direct's motion to dismiss Grady's breach-of-contract claim.

### III. Breach of Implied Covenant of Good Faith and Fair Dealing

"Minnesota law does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing separate from the underlying breach of contract claim." *Medtronic, Inc. v. ConvaCare, Inc.*, 17 F.3d 252, 256 (8th Cir. 1994). In other words, "[a] malicious or bad-faith motive in breaching a contract does not convert a contract action into a tort action." *Space Ctr., Inc. v. 451 Corp.*, 298 N.W.2d 443, 452 (Minn. 1980) (citation omitted). "[A]n enforceable contract must exist before the duty of good faith and fair dealing can be implied by law into it." *Cox v. Mortg. Elec. Registration Sys., Inc.*, 685 F.3d 663, 670 (8th Cir. 2012). But that does not mean that plaintiffs must "first establish

15

an express breach of contract claim—indeed, a claim for breach of an implied covenant of good faith and fair dealing implicitly assumes the parties did not expressly articulate the covenant allegedly breached." *Id.* (quoting *In re Hennepin Cnty. 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 503 (Minn. 1995)).

Progressive Direct argues that Grady's bad-faith claim should be dismissed because her breach-of-contract claim fails. Not only does this argument misstate Minnesota law, but the Court has declined to dismiss Grady's breach-of-contract claim for the reasons above. In reply, Progressive Direct pivots to arguing that Grady may not plead breach-of-contract and bad-faith claims in the alternative. That misstates Minnesota law, too. *See Hennepin Cnty.*, 540 N.W.2d at 495 ("We conclude that the bondholders' claims for breach of express and implied contract provisions are sufficient to withstand defendants' motions to dismiss . . . .").

Progressive Direct also contends that it lacks discretion under the Policy necessary to state a plausible bad-faith claim. Again, the Court disagrees. It is true that a bad-faith claim requires a defendant to have discretion under a contract and to have abused its power. *See Cox*, 685 F.3d at 671; *BP Prods. N. Am. v. Twin Cities Stores, Inc.*, 534 F. Supp. 2d 959, 965 (D. Minn. 2007) ("The implied covenant of good faith and fair dealing prevents the party with control from abusing its discretion in a manner that would inflict harm on the vulnerable party and undermine the purpose of the contract."). Grady alleges that Progressive Direct exercised its discretion to calculate ACVs under the Policy

unreasonably and with an improper motive. (Compl. ¶¶ 67–69.) That is enough for pleading purposes. The Court denies Progressive Direct's motion to dismiss this claim.

## IV. Declaratory Judgment

Grady's final cause of action is for a declaratory judgment that Progressive Direct breaches the Policy when it uses erroneous PSAs. (*Id.* ¶ 90.) Progressive Direct argues that Grady lacks standing to bring this claim. Plaintiffs bear "the burden of showing that [they] ha[ve] standing for each type of relief sought." *Frost v. Sioux City*, 920 F.3d 1158, 1161 (8th Cir. 2019) (citation omitted). "To have Article III standing to seek prospective relief, plaintiffs must show they are likely to suffer future injury that will be remedied by the relief sought." *Elizabeth M. v. Montenez*, 458 F.3d 779, 784 (8th Cir. 2006). "Past exposure" to misconduct "is not enough absent present adverse effects." *Id.* (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). Put simply, Grady must show that she faces "an ongoing injury or an immediate threat of injury." *Webb ex rel. K.S. v. Smith*, 936 F.3d 808, 815 (8th Cir. 2019).

Grady fails to plead that she suffers an ongoing injury from Progressive Direct, so she lacks standing to bring a declaratory-judgment action. She alleges that Progressive Direct's "unlawful common policy and general business practice of applying Projected Sold Adjustments is ongoing." (Compl. ¶ 91.) And she asserts that Progressive Direct "continues to breach" its Policy. (*Id.*) But Grady does not plead future injury: she does not allege that she is personally likely to total another car such that Progressive Direct

17

would again miscalculate an ACV using the erroneous PSAs. That is fatal to her declaratory-judgment claim: Grady lacks an "actual or imminent" future injury, and her past injury does not grant her standing because a forward-looking declaratory judgment would not redress it. *Frost*, 920 F.3d at 1161 (citation omitted); *see also Williams*, 2022 WL 4482726, at *11 (dismissing a materially identical declaratory-judgment claim for lack of standing). The Court grants Progressive Direct's motion to dismiss Grady's final cause of action.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, Progressive Direct's Motion to Dismiss (ECF No. 35) is GRANTED IN PART AND DENIED IN PART, as described above.

Dated: November 30, 2022                    BY THE COURT:

                                                                              s/Nancy E. Brasel
                                                                              Nancy E. Brasel
                                                                              United States District Judge